**BURT RIGID BOX, INC., f/k/a F.N. Burt Company, Inc., Plaintiff–Appellant–Cross–Appellee,**

v.

**TRAVELERS PROPERTY CASUALTY CORP., f/k/a/ Aetna Casualty and Surety Company, Defendant–Appellee–Cross–Appellant.**

**Nos. 01–7230(L), 01–7649(XAP).**

United States Court of Appeals, Second Circuit.

Argued May 14, 2002.

Decided Aug. 16, 2002.

Jonathan A. Mugel, Lippes, Silverstein, Mathias & Wexler LLP, Buffalo, NY, for Plaintiff–Appellant–Cross–Appellee.

Robert Lewin (Michelle L. Jacobson, Marcia Ann Miller, of counsel), Stroock & Stroock & Lavan LLP, New York, NY, for Defendant–Appellee–Cross–Appellant.

Thomas W. Brunner, Laura A. Foggan, John C. Yang, Stephen C. Tosini, Wiley, Rein & Fielding, Washington, DC, for Amicus Curiae Insurance Environmental Litigation Association.

JOSÉ A. CABRANES, Circuit Judge:

Burt Rigid Box, Inc., a manufacturer of boxes and other containers, brought this action seeking a declaration that Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company) [1] was obligated to provide insurance coverage under certain lost insurance policies issued to Burt's former parent company. Burt sought coverage related to claims brought against it for alleged improper disposal of toxic waste in the 1960s and early 1970s at four sites near Buffalo, New York: the Pfohl Brothers Landfill, the Booth Oil Landfill, the Sleepy Hollow campground, and the Alltift Realty Landfill.

In a comprehensive Decision and Order dated January 26, 2001, the United States District Court for the Western District of New York (Leslie G. Foschio, *Magistrate Judge*) [2] granted in part and denied in

---

1. The defendant was erroneously sued as "Travelers Property Casualty Corp." In this opinion, we will refer to the defendant as "Aetna," following the usage of the parties and the District Court.

2. The parties consented to a reference to Magistrate Judge Foschio for all purposes, pursuant to 28 U.S.C. § 636(c)(1), on June 26, 1998, and the case accordingly was referred and reassigned to Magistrate Judge Foschio

part cross-motions for summary judgment, thus disposing of all the parties' claims. *See Burt Rigid Box Inc. v. Travelers Prop. Cas. Corp.*, 126 F.Supp.2d 596 (W.D.N.Y. 2001). Specifically, the District Court held, *inter alia*, that (1) Burt was entitled to summary judgment on the issue of the existence and terms of the policies because it had adduced sufficient unopposed evidence to establish these facts by a preponderance of the evidence; (2) Burt's notice of occurrence with respect to alleged contamination at the Pfohl and Sleepy Hollow sites was untimely, which untimeliness was not excused under the circumstances; (3) Aetna had not waived and was not estopped from asserting late notice defenses, except with respect to certain bodily injury claims for which it had failed to promptly disclaim coverage pursuant to section 3420(d) of the New York Insurance Law; and (4) Aetna was entitled to summary judgment as to certain claims which the undisputed evidence showed were outside the coverage of the policies at issue. *Id.* at 641. In a Supplemental Decision and Order dated April 24, 2001, the District Court granted Aetna's motion to amend the judgment to include all property damage claims related to the Pfohl site among those which Aetna was excused from defending because of Burt's late notice of occurrence. *See Burt Rigid Box Inc. v. Travelers Prop. Cas. Corp.* No. 91–CV–303F, slip op. (W.D.N.Y. Apr.24, 2001).

The parties now cross-appeal. Burt contends that the District Court erred in holding that its notice of the Pfohl site occurrence was untimely under the circumstances and that Aetna did not waive and was not estopped from asserting its late notice defenses. Burt also argues that the District Court erred in considering evidence outside the four corners of the complaints filed against Burt to grant Aetna

summary judgment on claims that are outside the scope of the coverage of the policies at issue. Aetna contends that the District Court erred in granting Burt summary judgment on the issue of the existence and terms of the policies by holding that Burt was required to prove those facts by a preponderance of the evidence, rather than by clear-and-convincing evidence. Aetna also argues that the District Court erred in holding that Aetna is required to defend certain bodily injury claims because (a) section 3420(d) of New York's Insurance Law is inapplicable inasmuch as the alleged injuries did not result from an "accident" within the meaning of that statute; and (b) even if section 3420(d) is applicable, (i) it was not required to disclaim because it claims that no insurance policy exists, (ii) its prompt disclaimers on grounds other than late notice were sufficient to preserve its right to later disclaim on the ground of late notice, and (iii) its disclaimers on the basis of late notice were timely under the circumstances.

We do not reach the issues of the evidentiary standard by which an insured is required to establish the existence and terms of a lost insurance policy, the timeliness of Burt's notice of occurrence with respect to the Pfohl site, or the applicability of or Aetna's compliance with section 3420(d) of New York's Insurance Law. We hold that (1) even if an insured is required to prove the existence and terms of a lost insurance policy by clear-and-convincing evidence, Burt nevertheless is entitled to summary judgment on the issue of the existence and terms of the policies in this case because it has adduced sufficient unopposed evidence to meet that standard; (2) Aetna waived its late notice defenses by failing to include them among a series of

by District Judge Richard J. Arcara on July 2, 1998.

affirmative defenses in its Answer, which contained its disclaimers of coverage based on other provisions of the polices; and (3) the District Court did not abuse its discretion or otherwise err in granting summary judgment to Aetna as to certain claims that the undisputed evidence showed were outside the coverage of the policies at issue.

Accordingly, we reverse the judgment of the District Court solely with respect to the claims related to the Pfohl and Sleepy Hollow sites, which claims the District Court held Aetna was not required to defend because Burt had not provided timely notice of occurrence. In all other respects, we affirm the judgment of the District Court.

## I. BACKGROUND

The facts of this case are set forth extensively in the District Court's opinion, see *Burt Rigid,* 126 F.Supp.2d at 603–07, familiarity with which is presumed. Accordingly, we set forth below only a brief summary of the facts necessary to decide the issues on appeal.

Prior to 1983, Burt was a wholly-owned subsidiary of Moore Corporation of Toronto, Canada. Moore—a holding company—administered its insurance program from Toronto, covering itself and all of its subsidiaries. On April 13, 1983, Moore sold Burt to three individual investors from Buffalo, New York.

In March 1985, the New York State Department of Environmental Conservation ("DEC") informed Burt that it had been identified as a generator of hazardous wastes deposited at the Pfohl Landfill. Although the DEC did not explicitly assert any legal claims against Burt, it requested

that Burt provide certain information regarding Burt's activities at the Pfohl Landfill to assist the DEC's investigation. After performing an internal investigation, Burt concluded that it did not dispose of any hazardous waste at the Pfohl site and that, accordingly, it did not anticipate any liability for any remediation activities undertaken at that site.

On March 14, 1986, the DEC notified Burt that it was considered the generator of hazardous waste materials discovered in 18 drums that had been transported to and deposited in the Sleepy Hollow site. Accordingly, the DEC considered Burt a responsible party regarding the Sleepy Hollow site.

In August 1986, Burt received a letter from counsel for the "Pfohl Bros. Site Steering Committee"[3] stating that Burt had been "identified by [DEC] as a potentially responsible party ... with respect to the Pfohl [site]." The Steering Committee proposed that each "potentially responsible party" pay an initial assessment of $3,000 into an administrative trust fund to assist in responding to the DEC's demands. Burt then provided notice of the Steering Committee's letter and the DEC inquiry to the Hartford Insurance Company, its insurance carrier since 1983, and asked Moore to provide Burt with the identity of any and all insurers who may have provided liability coverage to Burt prior to 1983.

In September 1986, Moore provided Burt with the identities of Moore's insurance carriers for the years 1972 to 1983. Moore was unable, however, to identify the name of its liability insurance carriers for years prior to 1972.

---

**3.** The Steering Committee was formed by companies that also had been identified by the DEC as "potentially responsible parties" for the contamination at the Pfohl landfill for the purpose of responding to the DEC's demand that certain remedial actions be taken immediately.

On February 3, 1987, Burt entered into a consent order with the DEC in which Burt agreed to undertake a clean-up of the Sleepy Hollow site.

In September 1987, the DEC requested additional information from Burt regarding its involvement with hazardous waste dumped in the Pfohl Landfill.

On February 17, 1988, the DEC advised Burt that it had been identified as a potentially responsible party because it was a generator of hazardous waste deposited at the Alltift Realty Landfill, and, on February 19, 1988, the DEC advised Burt that it had been identified as a potentially responsible party as a generator of hazardous waste deposited at the Booth Oil site. The letters informed Burt that the DEC was asserting claims against Burt for the costs of investigation and remediation of those sites. In a similar letter dated March 31, 1988, the DEC informed Burt that it had "reason to believe" that Burt had generated hazardous waste that was deposited at the Pfohl site.

On April 14, 1988, Burt again asked Moore to identify the carriers, policy numbers, and effective dates of coverage for its insurance program prior to 1983. On May 4, 1988, Moore provided Burt for the first time with information indicating that Aetna had been Moore's—and Burt's—commercial general liability carrier in the late 1960s and early 1970s. In letters dated May 6 and 10, 1988, Burt notified Aetna of the DEC's claims against it with regard to the Pfohl, Alltift, and Booth Oil sites. In another letter, dated June 16, 1988, Burt told Aetna that it was incurring defense costs related to these claims.

In a letter of October 19, 1988, Aetna told Burt that it had no evidence that it had ever insured Burt and that, because Burt had not produced documentation of any applicable policies, it would not provide coverage to Burt.

On December 27, 1990, Burt wrote to Aetna to notify it of the DEC's claim related to the Sleepy Hollow site and requested that Aetna provide a defense and indemnify Burt as to that claim. In a letter dated January 16, 1991, Aetna denied coverage, for nearly identical reasons to those asserted earlier.

On May 9, 1991, Burt filed this action, seeking a declaration that Aetna was obligated to provide Burt with coverage for the Pfohl site and other sites.

Subsequently, several parties brought lawsuits against Burt asserting claims under, *inter alia*, Sections 107 and 113 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607 and 9613, and state tort law relating to the Pfohl Landfill. These actions include property damage actions entitled *Cline v. Occidental Chemical Corp.* ("*Cline I*"), *Pfohl v. Amax, Inc., Freier v. Amax, Inc., Bartlebaugh v. Amax, Inc., and Marzec v. Amax, Inc.* (collectively, "the property damage actions"). In these actions, numerous plaintiffs allege that, between 1932 and 1971, Burt and others generated hazardous waste that was disposed of in the Pfohl Landfill and to which the plaintiffs, who owned and lived at properties near the Pfohl Landfill, were exposed, diminishing the value of such property and the plaintiffs' quality of life. *See Burt Rigid*, 126 F.Supp.2d at 605.

On May 24, 1994, Burt notified Aetna of the claims asserted against it in *Cline I* and requested that Aetna defend and indemnify it. Burt similarly notified Aetna of the other property damage actions. Aetna refused to provide any defense or indemnification with regard to the property damage claims on the asserted basis that it was unable to verify that Burt was an insured under the alleged policies.

Burt also was named as a defendant in four personal injury actions entitled *Ewert v. Westinghouse Electric Corporation, Cline v. Westinghouse Electric Corporation ("Cline II"), Spink v. Westinghouse Electric Corporation,* and *Weigel v. Westinghouse Electric Corporation* (collectively, "the bodily injury actions"). In these actions, numerous plaintiffs assert personal injury and wrongful death claims they attribute to exposure to hazardous waste generated by Burt and others and deposited into the Pfohl Landfill during the 1950s and 1960s. *See Burt Rigid,* 126 F.Supp.2d at 605.

Burt promptly notified Aetna of the bodily injury actions and requested that Aetna provide both a defense and indemnification. Aetna refused to provide any defense or indemnification with regard to the bodily injury actions, again asserting that it was unable to verify that Burt was an insured under the alleged policies.

In 1998, Burt moved for summary judgment in the instant declaratory judgment action, claiming that the undisputed evidence established that Aetna issued insurance policies covering Burt for the period from December 31, 1963, through December 31, 1971, and that Burt was entitled to coverage under those policies for four environmental site claims and ten lawsuits related to the Pfohl site. Aetna cross-moved for partial summary judgment, contending that it was not obligated to provide coverage for the Sleepy Hollow and Pfohl site environmental claims and the Pfohl site lawsuits because Burt failed to provide Aetna with timely notice of the occurrences and claims for which it sought coverage, that it was entitled to an "apportionment" of defense costs for those lawsuits that included claims arising from occurrences outside the 1963 to 1971 time period, and that it was not obligated to defend certain lawsuits with claims falling wholly outside the 1963 to 1971 time period. In opposing the cross-motion, Burt contended that its notifications had been timely under the circumstances and that, even if they were untimely, Aetna nevertheless was obligated to provide coverage because Aetna waived the defense of untimely notice through its own untimely disclaimer of coverage on that basis.

In a Decision and Order dated January 26, 2001, the District Court held that Burt had produced sufficient uncontroverted evidence to establish that Moore had obtained comprehensive general liability ("CGL") insurance policies from Aetna for the years 1963 through 1971, that Burt was covered as an additional insured under those policies, and that Aetna was obligated to provide coverage under those policies for the environmental site claims related to the Alltift and Booth Oil sites as well as all of the Pfohl lawsuits except *Cline I. See Burt Rigid,* 126 F.Supp.2d at 641. However, the District Court also held that (1) Burt's untimely notices of occurrence excused Aetna's obligation to provide coverage for the environmental claims related to the Sleepy Hollow and Pfohl sites; (2) Burt's untimely notice of claim excused Aetna's obligation to defend the *Cline I* suit, and (3) Aetna's failure to timely disclaim coverage based on late notice did not waive the defense or estop Aetna from asserting its untimely notice defenses because Burt had not demonstrated prejudice resulting from Aetna's delay. *Id.* In addition, the District Court held that Aetna was not obligated to defend or indemnify Burt as to certain claims outside the coverage of the policies, including certain claims asserted in the bodily injury lawsuits. *Id.* On April 24, 2001, the District Court granted Aetna's motion to amend the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure and held, in a Supplemental Decision and Order, that Aetna was not required to defend any

of the property damage actions on the ground that Burt's notice of occurrence with respect to the Pfohl site was untimely. *Burt Rigid,* 91–CV–303F, slip op., at 18–19 (W.D.N.Y. Apr. 24, 2001).

The parties now cross-appeal. On appeal, Burt contends that the District Court erred in holding that its notice of the Pfohl site occurrence was untimely under the circumstances and in holding that Aetna did not waive and was not estopped from asserting its late notice defenses. Burt also argues that the District Court erred in considering evidence outside the four corners of the complaints filed against Burt to grant Aetna summary judgment with respect to claims which are outside the scope of the coverage of the polices at issue. Aetna contends that the District Court erred in granting Burt summary judgment on the issue of the existence and terms of the policies, by holding that Burt was required to prove those facts by a preponderance of the evidence, rather than by clear-and-convincing evidence. Aetna also argues that the District Court erred in holding that Aetna is required to defend certain bodily injury claims on the ground that Aetna failed to comply with section 3420(d) of New York's Insurance Law[4] because (a) section 3420(d) is inapplicable because the injuries did not result from an "accident" within the meaning of that statute; and (b) even if section 3420(d) is applicable, (i) it was not required to disclaim because it claims that no insurance policy exists, (ii) its prompt disclaimers on grounds other than late notice were sufficient to preserve its right to later disclaim on the ground of late notice, and (iii) its

disclaimers on the basis of late notice were timely under the circumstances.

*Amicus curiae* Environmental Litigation Association filed a brief in support of Aetna arguing that (1) an insured must prove the existence and terms of a lost policy by clear and convincing evidence and (2) the District Court was correct to conclude that an insured is not excused from failure to give timely notice of a claim based on the insured's asserted belief that it was not liable.

## II. DISCUSSION

### A. *Legal Standards*

 We review a grant of summary judgment *de novo.* *See, e.g., Commercial Union Assurance Co. v. Oak Park Marina, Inc.,* 198 F.3d 55, 59 (2d Cir.1999). Summary judgment is appropriate where the moving party demonstrates that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505 (emphases omitted). Whether a fact is material depends on the substantive law of the claim and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will

---

**4.** Section 3420(d) of the New York Insurance Law provides:

> If under a liability policy delivered or issued for delivery in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.

properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. 2505.

If the party moving for summary judgment demonstrates the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995). The nonmoving party "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Id.*

In a diversity case, federal courts generally apply the substantive law of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Thrift Drug, Inc. v. Universal Prescription Adm'rs*, 131 F.3d 95, 97 (2d Cir.1997). In this case, the parties agree that the law of New York applies, and we will therefore apply that law. *See, e.g., Krumme v. Westpoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir.2000).

### B. *The Existence of the Insurance Policies*

#### 1. Evidentiary Standard

As a threshold matter, the District Court held that an insured seeking coverage under a "lost" policy must prove the existence and terms of the policy by a preponderance of the evidence. *See Burt Rigid*, 126 F.Supp.2d at 610–12. In so holding, the District Court relied on *Gold Fields American Corp. v. Aetna Cas. & Sur. Co.*, 173 Misc.2d 901, 661 N.Y.S.2d 948, 949–51 (Sup.Ct.1997), the only decision of the New York courts on the issue,

and a decision that had been relied on by at least one other federal court in reaching the same conclusion. *See Employers Ins. of Wausau v. Duplan Corp.*, No. 94 Civ. 3143, 1999 WL 777976, at *23 *24 (S.D.N.Y. Sept.30, 1999).

Aetna and *Amicus* Insurance Environmental Litigation Association, primarily relying on *Boyce Thompson Inst. for Plant Research, Inc. v. Ins. Co. of N. Am.*, 751 F.Supp. 1137, 1140–41 (S.D.N.Y.1990)—a case decided before *Gold Fields*—argue that Burt should be held to a "clear and convincing" standard. It is not necessary for us to decide this issue, however, because, as we further discuss below, Burt is entitled to summary judgment on the issue of the existence and terms of the policies even if a "clear and convincing" standard applies.

#### 2. The Alleged Factual Dispute Regarding Burt's Diligence

The parties agree, and the District Court noted, that an insured may rely on secondary evidence (*i.e.*, evidence other than the policy itself) to prove the existence and terms of an insurance policy only "where the insured demonstrates that it has made a 'diligent but unsuccessful search and inquiry for the missing [policy].'" *Burt Rigid*, 126 F.Supp.2d at 612 (quoting *Burroughs Wellcome Co. v. Commercial Union Ins. Co.*, 632 F.Supp. 1213, 1223 (S.D.N.Y.1986)). As the District Court correctly noted, this requirement stems from the "best evidence" rule codified at Rule 1004 of the Federal Rules of Evidence.[5] New York has an analogous evidentiary rule. *See, e.g., Schozer v. William Penn Life Ins. Co.*, 84 N.Y.2d 639, 643–44, 620 N.Y.S.2d 797, 799, 644 N.E.2d

---

5. Rule 1004 provides, in relevant part, that

The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if—

**(1) Originals lost or destroyed.** All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith . . . .

1353 (1994); *Aetna Life Ins. Co. v. Du Parquet, Huot & Moneuse Co.*, 65 Misc. 551, 120 N.Y.S. 759, 759–60 (App. Term 1910) (applying the rule in the context of a lost insurance policy).

In their briefs, however, the parties treat the "diligence" requirement as if it is an element that must be proved by Burt (to the fact finder), rather than a threshold evidentiary question. *See* Aetna Br. at 51–55 (arguing that there were material issues of fact as to Burt's diligence); Burt Reply Br. at 44 n. 21 (disputing whether there was an issue of fact but not arguing that the issue of diligence was for the District Court as a matter of evidentiary admissibility); Aetna Reply Br. at 20–23 (again arguing that material issues of fact as to Burt's diligence rendered summary judgment inappropriate).

■ The "diligence" requirement is not a matter to be determined by the fact finder. Rather, under Rule 104(a) of the Federal Rules of Evidence, "[p]reliminary questions concerning … the admissibility of evidence shall be determined by the court." *See also United States v. Covello*, 410 F.2d 536, 543 (2d Cir.1969) ("The admissibility of secondary evidence is within the broad discretion of the trial judge."). We reverse an evidentiary ruling by the District Court only if it is " 'manifestly erroneous,' such that the admission constitutes an abuse of discretion." *United States v. SKW Metals & Alloys, Inc.*, 195 F.3d 83, 87 (2d Cir.1999). Thus, Aetna's arguments regarding the alleged existence of a disputed issue of material fact with respect to Burt's diligence are misplaced. Instead, to prevail on this issue, Aetna must demonstrate that the District Court abused its discretion in determining that the secondary evidence proffered by Burt was admissible and, accordingly, in considering it on the cross-motions for summary judgment. *Cf. Raskin v. Wyatt Co.*, 125

F.3d 55, 66 (2d Cir.1997) ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.").

The District Court carefully set forth the evidence presented by the parties on the issue of Burt's diligence, and held that Burt had met its burden. *See Burt Rigid*, 126 F.Supp.2d at 612–14. We see no error—let alone "manifest" error—in that decision.

### 3. The Secondary Evidence

■ Burt submitted a plethora of secondary evidence to support its claim that it had been covered by policies issued by Aetna to Moore during the relevant time period. That evidence included: (1) Moore business documents showing Aetna policy numbers with dates of coverage; (2) the acknowledgment by an Aetna claim representative that he recognized the policy numbers; (3) financial statements indicating that "Burt allocated funds for prepaid comprehensive liability insurance policies issued by Aetna, each policy providing $1,000,000 in coverage for the period December 31, 1963 through December 31, 1971," and referencing the same policy numbers; (4) testimony by Aetna Claims Counsel Robert E. Hyland that Aetna has records of claims and payments by Moore corresponding with some of the same policy numbers (Aetna destroyed its copies of policies of this vintage pursuant to a document destruction policy), and that those records indicated coverage under a "general liability" policy; (5) copies of correspondence between Aetna and Moore referencing the claims testified to by Hyland; (6) testimony from Moore's Corporate Risk and Insurance Manager, Alexander Edward Milne, that Moore had insured all of its subsidiaries under its Insurance policies since at least the beginning of his employment with

Moore in 1938; (7) an excess insurance policy issued by the Home Insurance Company to Moore listing Burt as named insured and Aetna as the underlying insurance carrier, coupled with testimony by Milne that for Burt to be listed on the excess insurance policy it would have to be a named insured on the primary Aetna policy; and (8) testimony by a number of former and current officers of Moore, Moore's insurance agency, and Burt corroborating all of the above. *See Burt Rigid*, 126 F.Supp.2d at 614–21. The District Court noted—and Aetna does not dispute—that Aetna "fail[ed] to submit anything contradicting the secondary evidence," *id.* at 621, and held that this evidence would permit a reasonable jury to find "that Moore obtained CGL insurance policies from Aetna for the years 1963 through 1971 in the amount of $1,000,000, and that Burt was covered as an additional insured under those policies." *Id.* at 622. With respect to the *terms* of the CGL policies, the parties agreed that any CGL policy issued by Aetna to Moore between 1963 and 1971 would have been its "standard" or "typical" policy.[6]

Aetna argues that the evidence listed above fails to meet the clear-and-convincing standard, analogizing it to evidence in two cases in which district courts found that an insured had failed to meet that burden: *Boyce Thompson Institute for Plant Research v. Insurance Company of North America*, 751 F.Supp. 1137 (S.D.N.Y.1990), and *Maryland Casualty Co. v. W.R. Grace & Co.*, No. 83 Civ. 7451, 1995 WL 562179 (S.D.N.Y. Sept. 20, 1995). In each of those cases, however, the evidence was substantially less compelling and less well corroborated than the evidence Burt has presented here. For example, in *Boyce Thompson*, the insured relied on ledger sheet notations showing payments to an insurance broker and testimony from a broker employee that it had been employed by the insured to obtain coverage from the insurance carrier. The ledger notations, however—unlike the financial records here—did not indicate that the funds were intended to purchase liability insurance. *See* 751 F.Supp. at 1140–41 & n. 3. In *Maryland Casualty,* the insured could not even supply the policy number or policy term and relied principally on testimony. *See* 1995 WL 562179, at *9. Notably, the District Court in *Maryland Casualty* distinguished the insured's insufficient evidence as to certain (pre 1961) policies with its sufficient evidence as to other (1961 and 1967) policies as follows: "On the later policies, plaintiffs submitted documentary evidence supporting their existence and establishing their terms.... In certain instances, one piece of evidence corroborated another." *Id.*

In the instant case, there was overwhelming documentary and testimonial evidence, as listed above, establishing the existence of the policies and the fact that they were Aetna CGL policies. Certain items of evidence corroborated others. Aetna implicitly conceded that, assuming the policies existed, they were "typical" policies; thus, the specific terms of the policies were agreed to by the parties. Accordingly, we hold that Burt proved the existence and terms of the policies by clear and convincing evidence.

## C. Notice Issues

Aetna's "typical" CGL policies during the relevant period required the insured to

---

**6.** Although Aetna did not expressly concede that any CGL policy issued by Aetna to Moore between 1963 and 1971 would have been its "typical" policy, Aetna introduced evidence of its "typical" policy terms to argue that any relevant policy issued to Moore would have contained a pollution exclusion.

notify Aetna of any "accident" or "occurrence" "as soon as practicable," and also required the insured to "immediately forward to [Aetna] every demand, notice, summons or other process." Aetna contends—and the District Court agreed—that Burt provided Aetna with late notices of occurrence with respect to the Pfohl and Sleepy Hollow sites, and late notice of claim with respect to the *Cline I* lawsuit.

Burt does not dispute that the March 20, 1985, DEC letter provided Burt with notice of its possible liability regarding the Pfohl Landfill; that its entry into the February 3, 1987, consent order demonstrates that Burt was aware of its liability for contamination at the Sleepy Hollow site at that time; that Burt was served with the *Cline I* summons and complaint on June 23, 1993; and that, in turn, Burt provided the required notice to Aetna on May 6, 1988, December 27, 1990, and May 24, 1994, respectively.

Burt contends, however, that its notice to Aetna on these matters was timely under the circumstances. Specifically, Burt maintains that it reasonably and in good faith believed it was not liable for the contamination at the Pfohl Landfill until August 18, 1986, when the DEC identified Burt as a "potentially responsible party" with regard to the Pfohl Landfill, and that its lack of knowledge of the existence of the Aetna policies until May 3, 1988, when Moore advised Burt that Aetna was Moore's insurance carrier for the period 1963 through 1971, excuses any late notice regarding the Pfohl Landfill and Sleepy Hollow site.

In addition, Burt claims that even if its notification to Aetna was untimely with regard to any of the relevant claims, Aetna waived its right to deny coverage by failing to timely disclaim on the ground of untimely notice.

We find it unnecessary to consider whether, under the circumstances, Burt's notices were timely, because we agree with Burt that Aetna waived its right to deny coverage on the ground that Burt's notices were untimely.

### 1. Notice of the Pfohl and Sleepy Hollow occurrences

Burt argued before the District Court that Aetna waived or is otherwise estopped from asserting the defense of untimely notice because Aetna itself did not timely disclaim coverage on this basis. The District Court held that, with respect to the property damage claims and the Pfohl Landfill and Sleepy Hollow environmental claims, any failure by Aetna to timely disclaim coverage based on late notice did not waive that defense because Burt had not shown that it was prejudiced by the late assertion of the defense. *See Burt Rigid,* 126 F.Supp.2d at 633–34 (citing *United States Fid. & Guar. Co. v. Weiri,* 696 N.Y.S.2d 200, 201, 265 A.D.2d 321, 322 (2d Dep't 1999)); *Burt Rigid,* 91–CV–303F, slip op., at 18–19 (W.D.N.Y. Apr. 24, 2001). With respect to the bodily injury actions, however, the District Court held that section 3240(d) of the New York Insurance Law [7] applies and precluded the untimely assertion of a defense of lack of notice. *Burt Rigid,* 126 F.Supp.2d at 632–33.

On appeal, Burt contends that the District Court erred in its analysis by failing to separately consider the issues of waiver and estoppel. Aetna, for its part, contends that the District Court erred in granting Burt summary judgment on the issue of Aetna's duty to defend the bodily injury actions, because (a) section 3420(d) is inapplicable since the injuries did not result

---

7. *See* note 4, *ante.*

from an "accident" within the meaning of that statute; and (b) even if section 3420(d) is applicable, (i) it was not required to disclaim because it claims that no insurance policy exists, (ii) its prompt disclaimers on grounds other than late notice were sufficient to preserve its right to later disclaim on the ground of late notice, and (iii) its disclaimers on the basis of late notice were timely under the circumstances.

■ Waiver and estoppel are distinct in New York insurance law. Waiver is the "voluntary and intentional relinquishment of a known \right." *Albert J. Schiff Assocs., Inc. v. Flack,* 51 N.Y.2d 692, 435 N.Y.S.2d 972, 975, 417 N.E.2d 84 (1980). Courts may find waiver where, for example, an insurance company disclaims coverage for failure to satisfy one condition precedent but neglects to assert other such conditions. *Id.*

■ Estoppel, on the other hand, arises where an insurer acts in a manner inconsistent with a lack of coverage, and the insured reasonably relies on those actions to its detriment. *See id.* Thus, estoppel requires a showing of prejudice to the insured. *See id.* Courts may hold that an insurer is estopped from asserting a defense of lack of coverage where, for example, an insurer, though not in fact obligated to provide coverage, defends the case without asserting any policy defenses, and as a consequence the insured reasonably suffers the detriment of losing control over its defense. *See id.*

The cases upon which the District Court relied in holding that Burt was required to establish prejudice all involved an unreasonable delay in disclaiming coverage—*i.e.,* an action inconsistent with a lack of coverage—rather than a disclaimer based upon an alleged failure to satisfy one condition precedent or based upon a claim of noncoverage followed by a later disclaimer

based upon an alleged failure to satisfy another such condition. Thus, the District Court's holding—that, absent prejudice to Burt, Aetna's failure to timely disclaim coverage on the ground of late notice of occurrence or claim did not preclude it from asserting the defense—applies to Burt's estoppel argument, but not to its waiver argument.

■ Burt's waiver argument relies on Aetna's June 4, 1991, Answer in this action, in which Aetna disclaimed coverage on a number of specific grounds without specifically listing untimely notice. According to Burt, Aetna first asserted the defense of untimely notice in its May 1992 response to interrogatories.

Aetna retorts first by contending that the mention of "conditions" in the second affirmative defense set forth in its Answer was sufficient to assert the defense of untimely notice. The second affirmative defense, however, reads:

> If it should be determined that such insurance policies were in fact issued by AETNA to the [plaintiff] then the terms, conditions, exclusions and limitations of each insurance policy issued by AETNA to the plaintiff *do not provide coverage for and/or exclude from coverage* any liability in connection with the circumstances alleged by plaintiff and by the underlying proceedings described in the plaintiff's Complaint.

Answer at 2 (emphasis added).

Fairly read, this defense disclaims coverage not on the basis of failure to satisfy a condition precedent, such as the obligation to give timely notice of occurrence, but instead on the basis that the losses were not covered by the policies at issue.

■ Aetna next argues, relying on *Schiff,* that only a disclaimer based on a failure to satisfy a *condition* will waive a

defense based on a failure to satisfy another condition, and that the disclaimers in its Answer were all based on policy exclusions—*i.e.*, on a claim that the losses were not covered by the terms of the policies. *Schiff*, however, does not so hold. Rather, *Schiff* merely cites, as examples of waiver, two cases where an insurer disclaimed based on a failure to satisfy one condition and later asserted a defense based on a failure to satisfy another condition, *see* 435 N.Y.S.2d at 975, 417 N.E.2d 84, and holds that a defense based on a lack of coverage is *not* subject to waiver, *id.*

Contrary to Aetna's argument, this Court—interpreting New York law—has explicitly held that "a repudiation of liability by an insurer on the ground that the loss is not covered by the policy operates as a waiver of the notice requirements contained in the policy." *H.S. Equities, Inc. v. Hartford Accident & Indem. Co.*, 661 F.2d 264, 270–71 (2d Cir.1981); *see also Rock Transport Properties Corp. v. Hartford Fire Ins. Co.*, 433 F.2d 152, 153 (2d Cir.1970); *Mutual Redevelopment Houses, Inc. v. Greater New York Mut. Ins. Co.*, 611 N.Y.S.2d 550, 552, 204 A.D.2d 145, 147 (1st Dep't 1994); *Shapiro v. Employers' Liability Assurance Corp.*, 139 Misc. 454, 248 N.Y.S. 587, 590 (Sup.Ct., Bronx Cty., 1931). Aetna's June 4, 1991, Answer contains a number of affirmative defenses disclaiming liability based on specific exclusions in Aetna's policies. *See, e.g.*, Answer at 3–6 (Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Sixteenth, and Seventeenth Affirmative Defenses). Thus, it is clear that, by the time of its Answer, Aetna had determined that if it had issued policies covering Burt, then

those policies contained provisions found in Aetna's "typical" policies. Inasmuch as the notice provisions Aetna now seeks to enforce are found in such policies, Aetna's failure to assert them at the time it disclaimed coverage based on other provisions of such policies waived its right to do so. *See H.S. Equities*, 661 F.2d at 270–71.

Because Aetna waived its right to assert a defense of untimely notice of occurrence with respect to claims related to the Pfohl site, it is not necessary for us to address Aetna's arguments with respect to the issue of the applicability of section 3240(d) to the bodily injury actions.

### 2. Notice of the *Cline I* claim

As noted above, Burt notified Aetna of the *Cline I* action on May 24, 1994.[8] In its Answer to Plaintiff's First Amended Complaint dated October 9, 1995, Aetna again disclaimed coverage based on a number of specific policy exclusions. It did not, however, assert the defense of untimely notice of claim with respect to *Cline I*.[9] Accordingly, for the reasons discussed above, Aetna waived the defense of untimely notice of claim with respect to *Cline I*.

### D. Aetna's Duty to Defend "Non–Covered" Bodily Injury Claims

The District Court granted summary judgment to Aetna on the issue of its duty to defend certain of the claims asserted in the bodily injury actions, *see* pp. 88–89, *ante*, based on undisputed evidence, extrinsic to the complaints in the underlying actions, that established that there was no set of facts under which those claims

---

**8.** Burt does not dispute that this notice was untimely as a matter of law, although it contends that it was not required to give timely notice of claim because of Aetna's earlier disclaimers of coverage. It is not necessary for us to decide this issue.

**9.** Burt claims—and Aetna does not dispute—that Aetna first raised the defense of untimely notice of claim with respect to *Cline I* in its June 26, 1998, Answer to Plaintiff's Second Amended Complaint.

would or could be covered by an Aetna policy. *See Burt Rigid,* 126 F.Supp.2d at 634–41. Burt argues that the District Court erred in considering facts outside the four corners of the complaints in the underlying actions. We disagree.

 An insurer's duty to defend is broader than its duty to indemnify and is generally determined by comparing the allegations of the complaints to the terms of the relevant policies. *See, e.g., Ruder & Finn Inc. v. Seaboard Sur. Co.,* 52 N.Y.2d 663, 669, 439 N.Y.S.2d 858, 861, 422 N.E.2d 518 (1981). Indeed, an insurer has a duty to defend even if "facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered." *Fitzpatrick v. American Honda Motor Co.,* 78 N.Y.2d 61, 63, 571 N.Y.S.2d 672, 672, 575 N.E.2d 90 (1991). An insurer's duty to defend, however, ends if "it establishes as a matter of law that there is no possible factual or legal basis on which it might eventually be obligated to indemnify its insured under any policy provision." *Allstate Ins. Co. v. Zuk,* 78 N.Y.2d 41, 45, 571 N.Y.S.2d 429, 431, 574 N.E.2d 1035 (1991). Accordingly, New York courts have, in appropriate cases, considered extrinsic evidence where that evidence may conclusively establish that an insurer faces no possible liability. *See Avondale Indus., Inc. v. Travelers Indem. Co.,* 774 F.Supp. 1416, 1424–25 (S.D.N.Y. 1991) (collecting cases).

 In this case, the District Court correctly determined that the evidence presented by Aetna as to the claims at issue leaves no doubt that it has no possible liability. *See Burt Rigid,* 126 F.Supp.2d at 634–41 (analyzing the evidence with respect to each claim). Accordingly, the District Court did not abuse its discretion or otherwise err in granting summary judgment to Aetna as to these claims.

### III. CONCLUSION

In sum, we hold that:

(1) even if an insured is required to prove the existence and terms of a lost insurance policy by clear-and-convincing evidence, Burt is nevertheless entitled to summary judgment on the issue of the existence and terms of the policies in this case because it has adduced sufficient unopposed evidence to meet that standard;

(2) Aetna waived its late notice defenses by failing to include them among a series of affirmative defenses in its Answer, which contained its disclaimers of coverage based on other provisions of the policies; and

(3) the District Court did not abuse its discretion or otherwise err in granting summary judgment to Aetna as to certain claims which the undisputed evidence showed were outside the coverage of the policies at issue.

Accordingly, we reverse the judgment of the District Court with respect to the claims related to the Pfohl and Sleepy Hollow sites that the District Court held Aetna was not required to defend because Burt had not provided timely notice of occurrence. In all other respects, we affirm the judgment of the District Court.

Each party shall bear its own costs.