KISER, Senior District Judge,
concurring in part and dissenting in part:
I concur with part II of the opinion which holds that the court has jurisdiction over the appeal pursuant to 18 U.S.C. § 3731. I dissent to part III, however, because the majority does not review the district judge’s factual and evidentiary rulings under the proper standard — abuse of discretion.
I.
In ruling on the admissibility of the Other Crime Evidence proffered by the government and set forth in the indictment, the trial court is required to make factual determinations. Fed.R.Evid. 104(a). “The applicability of a particular rule of evidence often depends upon the existence of a condition ... To the extent *322 that these inquiries are factual, the judge acts as a trier of fact. Often, however, rulings on evidence call for an evaluation in terms of a legally set standard ... These decisions, too, are made by the judge.” Fed.R.Evid. 104(a) advisory committee’s note.
First a judge has to decide whether the “other crimes” are intrinsic to the charged offense. Second, if the “other crimes” are not intrinsic, then admissibility must be tested under Federal Rules of Evidence 404(b) and 403. As the majority recognizes, the trial court found that the Other Crime Evidence was not properly part of the alleged scheme as set forth in the charged counts, nor was it admissible under Rules 404(b) and 403. Viewing these rulings on an abuse of discretion standard, I would largely uphold the district judge’s determinations.
As the majority points out, all of the charged offenses, including the murder, involve Jack Watkins. Siegel’s relations with him began in 1994 and her fraudulent conduct with regard to him continued through June 2003 (even though Watkins was allegedly murdered on or about May 13, 1996). The Charged Other Crime Evidence was sought to be introduced solely as part of the “scheme or artifice to defraud” elements of the mail and wire fraud charges. This evidence included:
1. 1968-1985: Siegel opened credit accounts under the identity of her first husband, Charles Kucharski.
2. 1985-1993: Siegel defrauded Ted Giesendaffer, her second husband. When confronted she became violent.
3. 1992-1994: Siegel had John May-berry sign an auto loan for her, then used that information to take out an unrelated loan for $3,000. She repaid the loan in 1994.
4. 1992-2003: Siegel met Eric Sie-gel, her third husband in 1992. The relationship was periodically interrupted before they finally married in 1998. Defendant took over Mr. Siegel’s existing accounts and opened new ones, resulting in approximately $300,000 in losses to Mr. Siegel. He repaid these debts.
5. 1994: After Jack Butcher gave her a $3,000 loan, she defaulted on the loan and unsuccessfully attempted to use Mr. Butcher’s personal information to take out a loan. Siegel became hysterical when he threatened to go to the police.
6. 1997: Siegel stole mail from the mailbox of James and Janice Lee and opened various credit accounts using their identities.
7. 1996: Siegel used her daughters’ identities to open credit accounts. She also used their identities to cash benefit checks made out to Watkins.
The government also sought to introduce Uncharged Other Crime Evidence, which consisted of four separate incidents in which Siegel stole an acquaintance’s wallet and used the information found therein to defraud the victim. These incidents occurred between January 1993 and December 1994. Siegel pled guilty to these crimes and received a suspended sentence and probation, which was still effective when she murdered Watkins.
II.
A.
The trial judge found that these other crimes were not properly part of a common scheme with the charged crimes, but rather that they were discrete acts of fraud. Indeed, the only thing in common with the charged crimes was the element of deception, but that can be said of all fraudulent conduct. Where the incidents were temporally separated, used different *323 means, and were otherwise unrelated to the charged conduct, a district judge does not abuse his discretion in refusing to allow the government to present these other incidents as part of the scheme. See McLendon v. United States, 2 F.2d 660, 660-61 (6th Cir.1924) (“it has never yet been thought that the ‘scheme to defraud’ ... could be found in the mere succession of diverse swindles, unrelated save as they had a common stage.”).
The district judge did abuse his discretion with regard to the evidence that Sie-gel used her daughters’ identities to cash Watkins’s checks. This is clearly intrinsic to the charged conduct and must therefore be admissible.
B.
That the government chose to denominate these other crimes as part of a scheme does not free them from scrutiny by the trial judge as to whether they qualify as part of the scheme. Nor does it free the evidence from the constraints of Rules 404(b) and 403. The majority finds that the trial court did not adequately explain why he found the evidence to be unduly prejudicial under Rule 403. I disagree. Rule 403 provides that evidence may be excluded if the court finds it to cause “unfair prejudice, confusion of the issues ... or by considerations of undue delay.”
In explaining his ruling the district judge spoke to these concerns: “[WJhile that’s very interesting evidence and relevant in a very expansive way ... the Court is satisfied that it is inflammatory, unduly prejudicial, is certain to give rise to a waste of time, it is cumulative and its probative value is significantly outweighed by its prejudicial and unfair prejudicial effect.” J.A. 424-25. Because the trial judge found that the Other Crime Evidence has little legal relevance, his conclusion differs from that of the government and the majority. Because this ruling was within the district judge’s discretion, the majority errs in overturning it.
C.
Testing the Other Crimes Evidence against the requirements of Rule 404(b), the district judge found that if offered by the government in its case-in-chief it would not qualify under any exception to the Rule. Instead, the district judge found that it would only be used to demonstrate that which Rule 404 is meant to prohibit— criminal character and propensity. It must be remembered that the court’s ruling went only to the opening statement and the government’s case-in-chief. The court left open the question of whether the evidence would be admissible after Siegel put on her defense. Of course, if Siegel should testify the evidence would be available for impeachment purposes.
Under Rule 404(b), the Other Crime Evidence may also be admissible if it is used as “proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.” The majority opines that the Other Crime Evidence fits under several of these options. In analyzing each of these, the majority explains why it would have reached a different conclusion than the district judge. However, it is never explained why the district judge’s decision was an abuse of discretion.
Initially, the majority opinion argues that much of the Other Crime Evidence goes toward Siegel’s motive for killing Watkins. Under this theory, Siegel killed Watkins not only to prevent him from telling the government about the crimes she had perpetuated against him, but also because then the Other Crime Evidence would be discovered. Because the Other Crime Evidence would have affected her *324 prison term and restitution obligations, she had an enhanced motive to try to keep the Other Crime Evidence hidden.
In its analysis, the majority relies on Willoughby, 860 F.2d 15, 24 (2d Cir.1988). In Willoughby the defendants were charged with obstruction of justice for seeking to prevent witnesses from testifying at their trial for robbery. The challenged evidence, which the district judge admitted, was the defendants’ participation in that robbery. The court concluded that “when a defendant has been charged with attempted or actual obstruction of justice with respect to a given crime, evidence of the underlying crime and the defendant’s part in it is admissible to show the motive for his efforts.” Id.
Willoughby is inapplicable to the present case for two reasons. First, the district court in that case admitted the challenged evidence and the circuit court concluded that this was not an abuse of discretion. Second, the challenged evidence here is not part of the underlying crime. This analysis would be appropriate if the challenged evidence was Sie-gel’s defrauding of Watkins. As discussed above, however, the district judge concluded that the Other Crime Evidence was not part of the scheme, and thus not part of the underlying crime. It is true that the Other Crime Evidence may have been relevant to enhance Siegel’s motive to silence Watkins, but the district court found that the prejudice sufficiently outweighed the probative value of such evidence. The government already had a solid motive and the cumulative nature of this evidence was disproportionately prejudicial. Thus it was not an abuse of discretion to exclude it.
The district judge did abuse his discretion, however, by failing to admit two pieces of evidence under this theory. First, Siegel’s relationship and subsequent defrauding of Eric Siegel should be admitted. The overlap of their relationship with Siegel’s relationship with Watkins and her incentive of having access to Eric Siegel’s substantial financial resources provide ample proof of motive.
Second, Siegel’s suspended sentence and probation which stemmed from the wallet thefts enhanced her motive to prevent Watkins from going to the police because she would have received a separate and increased penalty. This motive is considerably more concrete and thus more probative than the theoretical motives advanced by the government for the rest of her earlier crimes. The district judge recognizes this theory of relevance and says “depending on how things go, I’m not foreclosing the government from persuading me ... I’m not totally foreclosing the possibility that the Government will persuade me to admit evidence of at least one, of no more than one I should say of the wallet theft incidents.” J.A. 426. The motive is not created by the wallet thefts themselves, but instead by the suspended sentence and probation. Due to the heightened probative value of this evidence, the district judge, having recognized the valid purpose of this evidence, abused his discretion by excluding it.
Next, the majority determines that the Other Crime Evidence is admissible under the “identity” or “modus operandi ” exception to Rule 404(b). Evidence of this type should be admitted where the crimes are similarly unique and distinctive. See United States v. Haney, 914 F.2d 602, 607 (4th Cir.1990) (noting that the evidence demonstrated a “signature crime.”). The modus operandi that the majority points to here is that Siegel obtained her victims’ personal information, used that information to obtain credit, and took steps to conceal her fraud. These are the routine steps in any identity theft crime. There is nothing suf *325 ficiently unique to admit this evidence under this exception to Rule 404(b).
The majority also justifies reversing the district court judge’s exclusion of the Other Crime Evidence because it could be used to refute Siegel’s potential defense strategies. For example, evidence that Siegel stole from her first husband to cover her gambling debts should be admitted to refute her potential defense that Watkins’s financial difficulties were caused by his own gambling problem. Every defendant has the right to elect to provide no defense at all, and the government would still be required to meet its burden. Therefore, it is improper for the government to present evidence which is used solely to attack a defense which has not yet been presented. It certainly is not an abuse of discretion to, as here, exclude such evidence from being presented during the government’s case-in-chief.
III.
Whether the excluded evidence was intrinsic to the charged scheme was a fact committed to the judgement of the district court under Rule 104 and must be reviewed under an abuse of discretion standard. Burt Rigid Box, Inc. v. Travelers Property Casualty Corp., 302 F.3d 83, 92 (2d Cir.2002). Whether the excluded evidence was admissible under Rules 404(b) and 403 is also reviewed under an abuse of discretion standard.
“Judgments of evidentiary relevance and prejudice are fundamentally a matter of trial management, for trial judges are much closer to the pulse of a trial than we can ever be and broad discretion is necessarily accorded them. The standard of review therefore counsels deference to the discretion of trial courts. In a criminal appeal, we will not vacate a conviction unless we find that the district judge acted arbitrarily or irrationally in admitting evidence.” United States v. Benkahla, 530 F.3d 300, 309 (4th Cir.2008). The same would apply for the exclusion of evidence.
Because the majority has failed to apply the abuse of discretion level of review to the rulings of the district judge, I dissent.