Joel D. EPSTEIN, James J. Glenn, Marina Dushas, Lawrence R. Miles, and Julia Porper, Plaintiffs,

v.

KEMPER INSURANCE COMPANIES, Defendant.

No. 98 Civ. 6175(RMB).

United States District Court, S.D. New York.

March 27, 2002.

Leonard N. Flamm, Law Offices of Leonard N. Flamm, New York City, for Plaintiffs.

Stephen E. Kesselman, Brief, Kesselman, Knapp & SChulman, LLP, New York City, for Defendant.

## DECISION AND ORDER

BERMAN, District Judge.

Joel Epstein ("Epstein"), James Glenn ("Glenn"), Marina Dushas ("Dushas"),

Lawrence Miles ("Miles") and Julia Porper ("Porper") (collectively "Plaintiffs") bring this action under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 620 *et seq.* (the "ADEA"), and the New York City Human Rights Law, §§ 8–107.1(a) and 8–502 ("NYCHRL"). Plaintiffs claim that Defendant, Kemper Insurance Companies ("Defendant" or "Kemper") discriminated and retaliated against Plaintiffs because of their age. Plaintiffs seek, among other things, monetary damages, attorneys fees, a declaratory judgment, reinstatement and a "cease and desist" order. On August 7, 1999, Defendant moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ.P."), and on August 8, 1999, Defendant moved in the alternative to sever the individual Plaintiffs' claims. On August 31, 1999, Plaintiffs opposed Defendant's motion for summary judgment ("Pl. Mem."). On September 8, 1999, Defendant also moved to strike Plaintiffs' Amended Rule 56.1 Counter–Statement of Disputed Material Facts ("Amended Rule 56.1 Statement") and the affidavit of Joel Epstein, dated August 30, 1999 ("Epstein Aff."). **For the following reasons, Defendant's motions are resolved as follows: (i) motion to strike is granted in part; (ii) motion for summary judgment is denied; and (iii) motion to sever is denied.**[1]

## I. BACKGROUND

Plaintiffs were employed as attorneys in Kemper's New York City litigation department. Plaintiff Epstein was hired in December 1979 as a Staff Attorney and, subsequently, held the position of Supervising Attorney. *See* Epstein Aff. at ¶¶ 2–3. Epstein has not returned to Kemper following a vacation in February 1999, claiming disability. *See* Defendant's Statement of Fact ("Def.SOF") at ¶ 77. Plaintiff Dushas was hired as a Trial Attorney in July 1980; she subsequently held the position of Supervising Attorney; and she was terminated in January 1999. *See id.* at ¶¶ 9, 79 and 138. Plaintiff Porper was hired as a Staff Attorney in December 1989; she resigned in April 1999. *See id.* at ¶¶ 24 and 44. Plaintiff Glenn was hired as a Staff Attorney in May 1988; he was terminated in January 1999. *See id.* at ¶¶ 139 and 160. And, Plaintiff Miles was hired as a Senior Trial Attorney in July 1992; he was terminated in July 1998. *See id.* at ¶¶ 162 and 178.

Anne Pope ("Pope") was hired as Managing Attorney in Kemper's New York City litigation department in January 1997. *See* Affidavit of Anne D. Pope, dated August 4, 1999 ("Pope Aff.") at ¶ 4. "[S]he began implementing procedures requiring attorneys in the office to handle their cases in a more aggressive manner," *see* Def. SOF at ¶ 10, presumably because "Kemper had raised the bar on performance expectations." *See id.* at ¶¶ 3, 13, 14 and 16. Plaintiffs allege that Pope "engaged in a campaign to systematically harass and abuse Plaintiffs ... who were all over 40 years old," by leveling "unjustified and at times trivial criticisms of their performances." *See* Pl. Mem. at 2. Over a two-year period during Pope's tenure, Plaintiffs' performance ratings were consistently lowered. *See* Def. SOF at ¶¶ 33, 40, 60, 65, 69, 74, 96, 107, 111, 123, 126, 138, 151, 154, 160, 165, 171, 178.

Between May and June of 1998, Plaintiffs filed age discrimination charges with the United States Equal Employment Opportunity Commission ("EEOC"). *See id.* at ¶ 21. In August 1998, Plaintiffs filed this action. *See id.*

---

**1.** The Court is not here ruling upon the ultimate merits of Plaintiffs' claims.

## II. STANDARD OF REVIEW

Affidavits submitted in support of, or opposition to, a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e). The court acts "well within its discretion by striking [ ] inappropriate portions of [an] affidavit." *Hollander v. American Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir.1999).[2]

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp., v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *see also Fran Corp. v. United States*, 164 F.3d 814, 816 (2d Cir.1999). The nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

"[S]ummary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir.2001). However, "[a] trial court must be cautious about granting summary judgment to an employer when, as here, its intent is at issue." *Gallo v. Prudential Residential Services, L.P.*, 22 F.3d 1219, 1224 (2d Cir.1994). Because direct evidence of discrimination is rarely found, "whatever other relevant depositions, affidavits and materials are before the district court must be carefully scrutinized for circumstantial evidence that could support an inference of discrimination." *Curley v. St. John's Univ.*, 19 F.Supp.2d 181, 187 (S.D.N.Y.1998) (quoting *Montana v. First Federal Savings and Loan Ass'n*, 869 F.2d 100, 103 (2d Cir. 1989)).

A motion to sever may be denied if Plaintiffs "assert any right to relief . . . in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in that action." Fed.R.Civ.P. 20(a); *see also Blesedell v. Mobil Oil Co.*, 708 F.Supp. 1408, 1421 (S.D.N.Y.1989). Whether or not to grant a motion to sever lies within the broad discretion of the district court, and the party making the motion bears the burden of showing that severance is "necessary to prevent prejudice or confusion, and to serve the ends of justice." *Lewis v. Triborough Bridge and Tunnel Authority*, 97 Civ. 0607(PKL),

**2.** Local Rule 56.1 of the United States District Courts for the Southern and Eastern Districts of New York ("Rule 56.1"), "requires a party moving for summary judgment to submit 'a separate, short and concise statement' setting forth material facts as to which there is no genuine issue to be tried." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir.2001) (quoting Local Rule 56.1(a)). The non-moving party must respond with a statement of fact to which it asserts triable issues remain. *See* Local Rule 56.1(b). "A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz*, 258 F.3d at 73.

2000 WL 423517 at *2 (S.D.N.Y. Apr. 19, 2000).

## III. ANALYSIS

### A. Motion to Strike

Defendant argues that the Epstein Affidavit is "rife with statements not based on personal knowledge," and contains "pure unadulterated argument" and "inadmissible hearsay." *See* Defendant Motion to Strike, dated September 8, 1999 ("Mot. to Strike") at 6–10. Defendant also argues that Plaintiffs' Amended Rule 56.1 Statement is "argument or conclusory," and its citations are "wildly misleading and incorrect." *See* "Mot. to Strike" at 2, 4; Defendant Response to Am. Rule 56.1 Statement, dated September 14, 1999 ("Def. Resp. to Rule 56.1 Statement") at 3–7. Plaintiffs contend that the Amended Rule 56.1 Statement "correct[s] inadvertent omission[s] of citations ..." and "delete[s] conclusory paragraph[s]," and further argue that Epstein is competent to testify as to events which occurred even after he took his leave of absence. *See* Affidavit of Norman Mednick, dated September 9, 1999 ("Mednick Aff.") at ¶¶ 3–4.

■ Statements in an affidavit or Rule 56.1 statement are inappropriate if they are not based on personal knowledge, contain inadmissible hearsay, are conclusory or argumentative, or do not cite to supporting evidence. *See* Fed.R.Civ.P. 56(e); Local Rule 56.1; *Holtz*, 258 F.3d at 71 (" '[W]here the cited materials do not support the factual assertions in the statements, the Court is free to disregard the assertion.' "); *Morris v. Northrop Grumman Corp.*, 37 F.Supp.2d 556, 568 (E.D.N.Y.1999) ("Hearsay statements set forth in an affidavit ... which cannot be categorized as a hearsay exception, conclusory allegations, legal arguments, and

statements not based on personal knowledge, may be stricken.").

The Court has disregarded any inappropriate portions of Plaintiffs' submissions, and its analysis relies upon admissible evidence. *See Northrop Grumman Corp.*, 37 F.Supp.2d at 569 ("[R]ather than scrutinizing each line ... and discussing whether they contain conclusory allegations, legal arguments, or hearsay ... the court ... will only consider [ ] evidence that is admissible."); *see also Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 292 (2d Cir.2000) (" '[T]he trial court has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary judgment motion....' ").[3]

### B. Motion for Summary Judgment

#### 1. Discrimination Claim

■ It is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual ... because of such individual's age...." 29 U.S.C. § 623(a)(1) (2001); *see also* NYCHRL §§ 8–107.1(a) and 8–502. Courts analyze ADEA claims under the burden-shifting analysis set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir.2000) ("[W]e analyze ADEA claims 'under the same framework as claims brought pursuant to Title VII.' "). Claims brought pursuant to the New York City Human Rights Law ("NYCHRL") are similarly examined. *See Curley*, 19 F.Supp.2d at 187 ("The same analysis applies to discrimination suits under the ADEA, the State HRL and the city HRO.").

■ Plaintiffs bear the initial burden of establishing a prima facie case. *See*

---

**3.** Defendants may renew any appropriate objections to admissibility at the time of trial.

*Reeves*, 530 U.S. at 142, 120 S.Ct. 2097; *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 639 (2d Cir.2000). Defendant must then set forth a legitimate non-discriminatory justification for its actions. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The plaintiff bears the ultimate burden of proving that the defendant's proffered reason is merely a "pretext" for intentional discrimination. *See Reeves*, 530 U.S. at 143, 120 S.Ct. 2097; *Windham v. Time Warner, Inc.*, 275 F.3d 179 (2d Cir.2001).

**Prima Facie Case**

 To establish a prima facie case, Plaintiffs must show that: (1) they were members of a protected class; (2) they were qualified for their positions; (3) they suffered adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *See Reeves*, 530 U.S. at 142, 120 S.Ct. 2097; *Galabya*, 202 F.3d at 639. **"The burden of making out the *prima facie* case is 'minimal'."** *Windham*, 275 F.3d at 187; *see also Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) ("The burden of establishing a prima facie case . . . is not onerous.").

 Plaintiffs have established a prima facie case of discrimination. First, Plaintiffs were all over the age of 40 at the time of the alleged discrimination. *See* Def. SOF at ¶ 9; *see also Maresco v. Evans Chemetics*, 964 F.2d 106, 110 (2d Cir. 1992) ("[P]rotection extends to employees who are at least 40 years old."). Second, Plaintiffs all appear qualified, i.e., they have law degrees, at least five years of trial experience dealing with complex issues and large damages exposure, knowledge of procedural and substantive law, state bar admittance, and Kemper work experience. *See* Pope Aff. at Attachs. 3, 4; Epstein Aff. at Exs. A–M, O, P, R, U, W, CC; Def. SOF at Exs. 8–9; Meehan Aff. at Ex. 10; *see also Owens v. New York City Housing Authority*, 934 F.2d 405, 409 (2d Cir.1991) ("*McDonnell Douglas* requires only a minimal showing of qualification to establish a *prima facie* claim.").[4] Third, Dushas, Miles and Glenn were terminated; Epstein's performance rating was lowered; and Porper was relieved of much of her workload. *See* Def. SOF at ¶¶ 138, 160, 178; Pl. Mem. at 9; Deposition of Julia Porper, dated April 29, 1999 ("Porper Dep.") at 194. These may constitute adverse employment actions.[5] *See*

**4.** "[T]he qualification necessary to shift the burden to defendant for an explanation of the adverse job action is minimal; plaintiff must show only that he 'possesses the basic skills necessary for performance of [the] job.'" *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 91 (2d Cir.2001); *see also Owens*, 934 F.2d at 409; *Powell v. Syracuse Univ.*, 580 F.2d 1150, 1155 (2d Cir.1978) ("[P]roof of competence sufficient to make out a prima facie case of discrimination was never intended to encompass proof of superiority or flawless performance.")

**5.** Defendant argues that "neither [Porper nor Epstein] has been subjected to a cognizable adverse employment action." *See* Def. Mem. at 13. Adverse employment actions "might

be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" *Galabya*, 202 F.3d at 640. When Defendant reduced Epstein's performance ratings (from a Level 3 to a Level 4), Epstein was faced with "reduced or denied salary increases and promotional opportunities." *See* Pl. Mem. at 9; *see also Vernon v. Port Authority of New York and New Jersey*, 154 F.Supp.2d 844, 855 (S.D.N.Y.2001) ("The Second Circuit has held that a downgrade in evaluation is an adverse employment action."); *Stembridge v. City of New York*, 88 F.Supp.2d 276, 283 (S.D.N.Y. 2000) ("[T]his change in [plaintiff's] pro-

*Galabya,* 202 F.3d at 640 ("A plaintiff endures an adverse employment action if he or she endures a 'material adverse change' in the terms and conditions of employment."). Fourth, among other things, six of seven Kemper staff attorneys over the age of 40 suffered adverse employment actions and were replaced by significantly younger attorneys. *See* Def. SOF at ¶ 9; Epstein Aff. at ¶¶ 20–22 and Exs. EE–JJ; Pope Aff. at Ex. 1; *Windham,* 275 F.3d at 188 ("Windham and each of the other Plaintiffs offered evidence supporting an inference of discrimination by proving that the accounts payable department terminated three of its four African–American employees and none of its Caucasian, Hispanic, or Asian employees.").

Plaintiffs also present evidence suggesting that Defendant set unattainable job expectations, including inadequate administrative support, unreasonable assignments, and unfair criticisms. *See* Def. SOF at Exs. 4, 7; Epstein Aff. at ¶¶ 4–5 and Exs. O, P, U, W; Affidavit of William Meehan, dated July 30, 1999 ("Meehan Aff.") at Attachs. 3, 5–7, 10; *Meiri v. Dacon,* 759 F.2d 989, 995 (2d Cir.1985) ("[C]ourts must also allow employees 'to show that the employer's demands were illegitimate or arbitrary."); *Stein v. McGraw–Hill, Inc.,* 782 F.Supp. 207, 212 (S.D.N.Y.1992) ("[T]he employer cannot establish an employee as unqualified by setting unrealistic standards.").

### Non–Discriminatory Justification

▉ Defendant argues that Plaintiffs "were [not] performing their jobs satisfactorily when they were disciplined and/or terminated." *See* Def. Mem. at 15. In so doing, Defendant has proffered a legitimate non-discriminatory justification for its actions. (Pope "enforced her new procedures by disciplining and eventually terminating those attorneys who did not follow those procedures.") *See* Def. Mem. at 2–3; Pope Aff. at ¶¶ 8, 10, 11; *see also St. Mary's Honor Ctr.,* 509 U.S. at 507, 113 S.Ct. 2742 (" 'The defendant must clearly set forth, through the introduction of admissible evidence,' reasons for its actions which, *if believed by the trier of fact,* would support a finding that unlawful discrimination was not the cause of the employment action.") (emphasis in original).

Defendant argues that: (1) Glenn was disciplined and terminated because he "failed to properly depose [ ] witness[es]" and "had not demonstrated improvement in the quality and handling of his files," *see* Pope Aff. at ¶¶ 84–85, 87–88; (2) Dushas was disciplined and terminated because she "was not responding to requests . . . from claims adjusters . . ." and "failed to adequately supervise her subordinates," and because of her "repeated failures to respond to [Pope's] requests to perform work, [and] her failures to perform her job competently . . . ," *see id.* at ¶¶ 18, 24, 28, 34, 40, 41; (3) Miles was disciplined and terminated because he "was not following any of the office policy procedures . . ."

---

motion eligibility could reasonably be deemed to have an adverse effect on plaintiff's employment status."). When Defendant removed Fishkill Claims Office projects from Porper's workload, Porper's material responsibilities were diminished. *See* Porper Dep. at 194; *see also Preda v. Nissho Iwai Am. Corp.,* 128 F.3d 789, 791 (2d Cir.1997) ("Preda raised an issue of material fact . . . as to whether he suffered adverse employment action," where "his job duties and responsibilities were downgraded. . . ."); *Valentine v. Standard & Poor's,* 50 F.Supp.2d 262, 286 (S.D.N.Y.1999) ("The terms and conditions of plaintiff's employment [ ] were arguably adversely affected by the reduction of his . . . functions. . . ."); *Curley,* 19 F.Supp.2d at 190 ("The definitions of 'material' and 'adverse'. . . are broad enough to include . . . job changes like the University's stripping of Dr. Curley's graduate course load.").

and "[b]ecause of his track record of poor performance," *see id.* at ¶¶ 60–64, 68, 69, 73; (4) Porper was disciplined because of complaints from claims adjusters, and "incidents that occurred with respect to her handling of case files," *see id.* at ¶¶ 74, 77; and (5) Epstein was disciplined because of his "deliberate effort to embarrass the office, and [Pope] personally ..." and because he "failed to adequately monitor the files assigned [to his subordinates] ...," *see id.* at ¶¶ 47, 49, 50, 55; *see also Schnabel,* 232 F.3d at 88 ("[D]ifficulty following instruction, 'outright insubordination', [and] 'inept performance' were 'clear and specific' reasons ... 'which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action.'").

**Pre–Text**

 The "ultimate burden of persuading the trier of fact ... remains at all times with the plaintiff." *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089. Plaintiffs may "establish a genuine issue of material fact through direct, statistical or circumstantial evidence...." *Gallo,* 22 F.3d at 1225. "[A] plaintiff's prima facie case, combined with sufficient evidence to find the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves,* 530 U.S. at 148, 120 S.Ct. 2097. Whether such a showing is sufficient is determined on a "case-by-case approach, with a court examining the entire record...." *Schnabel,* 232 F.3d at 90. " '[O]nly occasionally will a prima facie case plus pretext fall short of the burden a plaintiff carries to reach a jury on the ultimate question of discrimination'...." *Zimmermann v. Associates First Capital Corp.,* 251 F.3d 376, 382 (2d Cir.2001).

 The Court finds that there is a material question of fact as to whether Defendant's nondiscriminatory justification was a pretext for age discrimination. Among other things, the record includes:

(1) Evidence that prior to Pope's hire, seven of ten staff attorneys were over the age of 40; during Pope's tenure, six of the seven attorneys over the age of 40 suffered adverse employment actions; and currently, only one of eight staff attorneys is over the age of 40. *See* Epstein Aff. at ¶¶ 20, 21, 25; Pope Aff. at ¶¶ 41, 73, 88 and Attachs. 1, 25; Porper Dep. at 194; *see also Schnabel,* 232 F.3d at 87 ("[T]he fact that he was replaced by a 31–year–old is sufficient to give rise to the inference that he was the victim of discrimination.").

(2) Evidence that Pope criticized Plaintiffs for performance which, arguably, might have been remedied with additional clerical support; gave Plaintiffs unreasonable assignments; and unfairly characterized incidents for which Plaintiffs were disciplined. *See* Def. SOF at Exs. 4, 7; Epstein Aff. at ¶¶ 4, 5 and Exs. O, P, U, W; Meehan Aff. at Attachs. 3, 5–7, 10; *see also Windham,* 275 F.3d at 189 ("Thus, while [Defendant] blamed problems on [Plaintiff's] work ethic, a reasonable factfinder could infer there was too much work....").

(3) Evidence suggesting a possible "pattern" of criticisms and poor performance reviews during a two-year period beginning shortly after Pope's hire. *See* Pope Aff. at ¶¶ 41, 73, 88 and Attach. 25; Def. SOF at Exs. 4–9; Porper Dep. at 194; *see also Chambers,* 43 F.3d at 37 ("Circumstances contributing to a permissible inference of discriminatory intent may include ... the sequence of events ..., or timing of the discharge....").

(4) Evidence that attorneys hired during Pope's tenure were under the age of 40; and that between March 1997 and December 1998, Defendant advertised in the *New York Law Journal* for attorneys with the same or lesser qualifications than Plaintiffs. *See* Epstein Aff. at ¶¶ 22, 23 and Exs. Q, V, Y, X; Pope Aff. at Attach. 1; Deposition of Ian Feldman, dated June 10, 1999 at 11; *see also Carlton v. Mystic Transportation,* 202 F.3d 129, 135 (2d Cir.2000) ("[A] plaintiff's replacement by a significantly younger person is evidence of age discrimination."); *Chambers,* 43 F.3d at 37 ("Circumstances contributing to a permissible inference of discriminatory intent may include the employer's continuing ... to seek applicants from persons of the plaintiff's qualifications.").

Taken together, and without passing upon the ultimate merits of Plaintiffs' claims, these factors raise material questions of fact for a jury. *See Byrnie v. Town of Cromwell,* 243 F.3d 93, 102 (2d Cir.2001) ("A combination of factors, any of which judged on their own would be much less compelling, provide sufficient evidence to allow a reasonable jury to conclude that [Defendant's] explanation ... was a pretext for impermissible discrimination."); *Windham,* 275 F.3d at 189; *see also Gallo,* 22 F.3d at 1224 ("[T]he trial court's task at the summary judgment motion stage ... is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.").

### 2. Retaliation Claim

■ It is unlawful for an employer "to discriminate against any of his employees ... because such individual ... has opposed any practice made unlawful by [the ADEA]...." 29 U.S.C. § 623(d) (2001). Courts analyze ADEA and state law retaliation claims using the *McDonnell Douglas* burden-shifting analysis. *Naftchi v. New York University,* 14 F.Supp.2d 473, 489 (S.D.N.Y.1998); *see also Wanamaker v. Columbian Rope Co.,* 108 F.3d 462, 467 (2d Cir.1997) (A court "may dismiss claims brought under the New York State Human Rights Law, on the ground that the plaintiff failed to establish a claim under the ADEA.").

■ Plaintiffs bear the initial burden of establishing that: (1) they engaged in protected activity that was known to the Defendant; (2) they suffered adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action. *See Raniola,* 243 F.3d at 624; *Vernon,* 154 F.Supp.2d at 858. **"The burden at this stage is de minimis."** *Id.*

Plaintiffs' engaged in protected activity—of which the Defendant was aware—when they filed charges with the EEOC in May and June of 1998, and when they commenced this lawsuit in August 1998. *See* Def. SOF at ¶ 21; Epstein Aff. at ¶ 11. In addition, all of the Plaintiffs suffered adverse employment actions. *See supra* Sec. IV.A; Def. SOF at ¶¶ 138, 160, 178; Pope Aff. at Attach. 25; Porper Dep. at 194.

Defendant argues that Plaintiffs "cannot show a causal connection" because "all of the plaintiffs started receiving poor performance reviews long before ... they first filed EEOC charges." *See* Def. Mem. at 22–23. Plaintiffs do not appear specifically to address Defendant's argument, but instead, assert that the "onerous and hostile working conditions ..., [were] made worse after the filing of the [ ] EEOC charges...." *See* Pl. Mem. at 2–4.

 Proof of a causal connection between a protected activity and adverse employment action "can be established *indirectly* by showing that the protected activity was followed closely by discriminatory treatment...." *DeCintio v. Westchester County Medical Center*, 821 F.2d 111, 115 (2d Cir.1987) (emphasis in original). "[P]laintiff[s'] burden ... is a light one, usually demanding only that the protected activity preceded the adverse action in order to satisfy the causation requirement." *See Raniola v. City of New York*, 243 F.3d 610, 624 (2d Cir.2001).

 Between one and six months after the EEOC charges were filed by Plaintiffs and this lawsuit commenced, Miles, Dushas and Glenn were terminated, Epstein was "documented" for conduct which he claims was acceptable when performed by others, and Porper had her responsibilities diminished. *See* Def. SOF at ¶¶ 74, 138, 160, 178 and Ex. 5; Porper Dep. at 194. This nexus in time is sufficient to infer a causal connection. *See Raniola*, 243 F.3d at 624 (holding *prima facie* case established where plaintiff filed EEOC charges in July 1995 and was subsequently terminated in September 1996); *Vernon*, 154 F.Supp.2d at 859 (holding causal connection existed where the "downgrade in Vernon's [performance rating] occurred four months after the start of Port Authority's investigation into Vernon's complaint."); *Naftchi*, 14 F.Supp.2d at 489 ("[T]he fact that these actions were taken during the course of the lawsuit suffices to establish the causal connection for purposes of the *prima facie* case.").

Defendant, as noted, has proffered a legitimate non-discriminatory reason for its actions, namely that it disciplined Plaintiffs because they were not performing their jobs at the appropriate level. *See supra* Sec. IV.A; Def. Mem. at 24–25; *see also DeCintio*, 821 F.2d at 115 ("Appellees offered evidence showing that DeCintio was fired for gross misconduct."); *Vernon*, 154 F.Supp.2d at 859 ("Port Authority proffers a legitimate, non-discriminatory reason for the downgrade: that all supervisors were instructed to give more realistic ratings to all employees.").

 On this record, drawing all reasonable inferences in a light most favorable to Plaintiffs, a trier of fact could reasonably conclude that "the employer's proffered reasons ... were not [its] only reasons and that the prohibited factor was at least one of the 'motivating' factors." *Padilla v. Metro–North Commuter Railroad*, 92 F.3d 117, 122 (2d Cir.1996) (quoting *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir.1995)). "A plaintiff may establish a[n ADEA] violation even when a retaliatory motive is not the sole cause of the adverse employment action, or when there were other objectively valid grounds for discharge." *Raniola*, 243 F.3d at 625 (citations omitted); *see also DeCintio*, 821 F.2d at 115 ("Even if there were no dispute as to the impropriety of DeCintio's conduct, the evidence of retaliatory animus on the hospital's part would suffice to defeat the summary judgment motion.").

Plaintiffs present evidence that suggests that (1) Plaintiffs received either poor performance documentations, performance rating downgrades, or were terminated, after they filed charges with the EEOC and commenced this lawsuit; (2) criticisms lodged against Plaintiffs were unjustified and/or unreasonable; and (3) Defendant sought to hire younger employees of equal or lesser qualifications. *See* Def. SOF at ¶¶ 74, 138, 160; 178 and Exs. 4, 5, 7; Porper Dep. at 194; Epstein Aff. at 4–5 and Exs. O, P, Q, U, W; Meehan Aff. at Attachs. 3, 5–7, 10; *see also Raniola*, 243 F.3d at 625 ("The timing of the prosecution, and the surrounding events all lend support to Raniola's retaliation claim.").

320

## C. Motion to Sever

■ A motion to sever will be denied if plaintiffs' claims (1) arise out of the same transaction, occurrence, or series of transactions or occurrences, and (2) have a question of law or fact in common. *See* Fed.R.Civ.P. 20(a). These terms "permit all 'logically related claims' by or against different parties to be tried in a single proceeding." *Blesedell v. Mobil Oil Co.*, 708 F.Supp. 1408, 1421 (S.D.N.Y.1989). "The Second Circuit accords district courts broad discretion in determining whether to grant separate trials." *Lewis*, 2000 WL 423517 at *2.

Defendant argues that "the employment decisions made ... regarding each plaintiff were based solely upon the individual circumstances of each plaintiffs' employment," and that even if joinder is proper, "it would be highly prejudicial to Kemper...." Def. Mot. to Sever at 1–2. Plaintiffs contend that "Ms. Pope's actions and conduct towards them is the single unifying thread...." Pl. Mem. at 25.

■ Plaintiffs each allege similar discrimination issues, arising out of the same series of occurrences. Plaintiffs argue "that they had been injured by the same general policy of permitting discrimination against [persons over the age of 40]." *Blesedell*, 708 F.Supp. at 1422 (denying severance where "all of the plaintiffs complain of sexually discriminatory actions by ... their supervisor for a nine-month period, in placing them on probation and in decreasing their performance ratings."). Plaintiffs allege similar questions of fact and law, and rely upon the same statistical and circumstantial evidence supporting their allegations of age discrimination during Pope's tenure. *See Lewis*, 2000 WL 423517 at *3 (denying motion to sever where "both plaintiffs allege that the same supervisor 'aided and abetted' unlawful discrimination...."); *Blesedell*, 708 F.Supp. at 1422 ("[C]ourts have found that

the discriminatory character of a defendant's conduct is common to each plaintiff's recovery...."). "[A]ny prejudice or confusion [that might occur from trying Plaintiffs' claims before a single jury] can be remedied by a carefully drafted jury instruction." *Lewis*, 2000 WL 423517 at *5; *see also Blesedell*, 708 F.Supp. at 1421 ("[T]he Supreme Court has stated that 'joinder of claims, parties and remedies is strongly encouraged.'") (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).

## IV. CONCLUSION

For the reasons set forth above, (1) Defendant's motion to strike is granted in part and denied in part (and Defendant may renew any objections to admissibility at trial); (2) Defendant's motion for summary judgment denied; and (3) Defendant's motion to sever is denied. The parties are directed to appear in Courtroom 706, 40 Centre Street on April 22, 2001 at 3:30 p.m. for a settlement/scheduling conference.

**The parties are further directed forthwith to engage in good faith settlement negotiations prior to the conference.**