Frances NEWSOM–LANG, Plaintiff(s),

v.

WARREN INTERNATIONAL,
INC., Defendant(s).

No. 00 Civ. 6629LTSAJP.

United States District Court,
S.D. New York.

March 6, 2003.

Leonard Buddington, Yonkers, NY,[1] for Plaintiff.

McGuire Woods LLP, By: Ruth Goodboe, Norfolk, VA, Dunnington, Barthlow & Miller LLP, By: Thomas V. Marino, New York, NY, for Defendants.

## OPINION AND ORDER

SWAIN, District Judge.

Before the Court is the motion of defendant Warren International, Inc. ("Defendant") for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure dismissing plaintiff's claims and awarding Defendant costs and attorneys' fees. Plaintiff Francis Newsom–Lang ("Plaintiff") asserts that Defendant violated the federal Age Discrimination in Employment Act of 1967, as amended ("ADEA"), 29 U.S.C.A. §§ 621–634 (West 1994 and Supp.2002), and Section 296 of the New York Executive Law (McKinney 1993 & Supp.2001), in connection with the denial of a job promotion and with the terms and conditions, and the termination of, Plaintiff's employment. The Court has subject matter jurisdiction of plaintiff's ADEA claims pursuant to 28 U.S.C. section 1331 and of the state law claim pursuant to 28 U.S.C. section 1367.

The Court has considered thoroughly all submissions and argument related to Defendant's motion. For the following reasons, Defendant's motion for summary judgment is granted and its request for an award of attorney's fees is denied.

## BACKGROUND

The following material facts are undisputed except as specified below. Defendant is an executive search firm with an office in New York City. Plaintiff was hired by Defendant's President, Robert Warren, as a Researcher on March 23, 1998. Plaintiff was 49 years old at the time; Warren was over 50 at the time. Plaintiff had previously worked for Defendant in 1994, for approximately six weeks. As a Researcher, Plaintiff contacted candidates for job openings and presented interested candidates to Defendant's Consultants, who would then seek to place the candidates with client companies. Plaintiff's responsibilities included identifying and screening potential employers and candidates, as well as maintaining Defendant's candidate database. Plaintiff's performance as a Researcher was well received, and she worked on many of the firm's high-profile searches. Plaintiff received the highest base salary of the firm's Researchers for calendar year 1998, and the highest bonus and total compensation of all of the firm's Researchers for calendar year 1999. Plaintiff was also the eldest of the company's Researchers at all relevant times.

Defendant created a Director of Research position in 1999. Plaintiff expressed an interest in the position and considered herself qualified for it, but was not interviewed for the position. On or about September 17, 1999, Plaintiff responded to instructions from her supervisor, John Hasenauer (then the acting Director of Research) in an argumentative manner, hanging up the telephone on him, slamming the door on her way out of the office, and announcing that she was going home.[2] Plaintiff was given a reprimand

---

1. The motion was briefed by Michael H. Sussman, Esq., Plaintiff's former attorney.

2. *See* Defendant's Statement Pursuant to Local Rule 56.1 ("DR56.1") at ¶ 13 and evi-

concerning this behavior on September 21, 1999. Defendant perceived Plaintiff's behavior on this and other occasions as unprofessional and disruptive.[3]

On or about October 28, 1999, Defendant announced the promotion of another Researcher, Denise Rubino, to the Director of Research position. An outside candidate had been offered, and had turned down, the job before Rubino was promoted to the position. Defendant asserts that the decision to select Rubino was based on a consensus among the Consultants, Warren, and Muller (Defendant's Chief Operating Officer), that they could work with Rubino, that the majority of the Researchers would work effectively with her, and that Rubino had other relevant skills. Defendant also asserts that the Consultants' consensus was that Plaintiff lacked management skills and leadership ability necessary to perform the Director of Research job. Plaintiff has not presented evidence inconsistent with these assertions or the evidentiary support provided by Defendant.[4] Rather, Plaintiff asserts that she herself was qualified for the job, and that she worked well and got along with the Consultants.[5] Rubino was 33 years old at the

time of her appointment to the Director of Research position.

Plaintiff asserts that, from the time the Director of Research function was introduced with Hasenauer in the "acting" position, Hasenauer redirected search assignments from her to other Researchers, "knowingly and intentionally diminish[ing] plaintiff's income and income potential." *E.g.*, Compl. at ¶ 12; PR56.1 at ¶ 49. As noted above, Plaintiff had the highest base salary of any of Defendant's Researchers for 1998 and highest total compensation for 1999. Defendant denies that the reassignments complained of by Plaintiff were unusual or that they factored into bonus calculations. *See* DR56.1 at ¶ 49 and evidence cited therein.

Plaintiff also asserts that she was singled out for close review of her day-to-day work following Rubino's promotion. Plaintiff's assertion in this regard is supported only by her own affidavit attesting to her perceptions and to information allegedly received from unspecified fellow Researchers. *See* Lang Aff. at 56. Rubino testified in her deposition that she reviewed all of the Researchers' work by monitoring the

---

dence cited therein. Although Plaintiff's responsive Local Rule 56.1 statement purports generally to deny the allegation, Plaintiff's evidentiary response to Defendant's factual proffer in this connection does not deny any of the specifics of the behavior detailed in Defendant's evidence. Plaintiff focuses, rather, on contradiction of some immaterial specifics of Defendant's account of the meeting in which Plaintiff was given a reprimand following that incident. *See* Plaintiff's Statement pursuant to Local Rule 56.1 ("PR56.1") at ¶ 13 and affidavit cited therein.

3. Plaintiff's responsive statement generally denies Defendant's assertions in this regard, but again fails to meet specifically the factual allegations. Plaintiff asserts, rather, that her performance as a Researcher was good and that she worked well with others and worked on important searches. *Compare* DR56.1 at

¶ 12 *with* PR56.1 at ¶ 12 and evidence cited therein. Plaintiff asserts, for example, that she "never intentionally slammed our front door nor disrupted the workplace." *See* PR56.1 at ¶ 14 and Plaintiff's Affidavit in Opposition to Defendant's Motion for Summary Judgment ("Lang Aff.") at ¶ 23.

4. *See* DR56.1 at ¶¶ 26–27 and evidence cited therein; *see also* affidavits of Gabrielle Parish and Jacob Navon, annexed to Reply Memorandum in Support of Defendants' Motion for Summary Judgment.

5. Plaintiff also asserted that Defendant had presented no "non-hearsay" affidavit from consultants who held the views attributed to them. (PR56.1 ¶¶ 26–27.) Such affidavits were proffered in Defendant's reply papers. *See* affidavits cited *supra* note 3.

relevant database throughout the workday. *See* DR56.1 at ¶ 46 and evidence cited therein. Plaintiff also asserts that she was "excluded from meetings and information flow which the other researches [sic] accessed." (Lang Aff. at ¶ 62.)

On or about November 30, 1999, Plaintiff reacted to Rubino's introduction of a new worker to the Research group by leaving the office abruptly. *See* Lang Aff. at 67–68. Plaintiff asserts that she suffered a panic attack as a result of her perception that she would be fired and that the new person would replace her, and that she was hospitalized and thereafter recuperated at home for several days as a result of the incident. *Id.* On December 15, 1999, Plaintiff received a written job evaluation in which she was rated highly in the categories of Quality of Work, Communication, Dependability, Initiative, Problem Solving and Productivity, given the lowest rating in the category of "Interaction," and warned that further behavior such as failure to take direction constructively, questioning management decisions and acting "unprofessionally when you do not agree with [management] direction" would "result in your dismissal." (DR56.1 at ¶¶ 57–58 and evidence cited therein; PR56.1 at ¶¶ 57–58.) Plaintiff, perceiving the evaluation as negative, left the office without permission and slammed doors on the way out. (Lang Aff. ¶¶ 69–71; DR56.1 ¶ 61 and evidence cited therein.) Plaintiff asserts that she suffered another panic attack as a result of her perception of imminent termination and that she returned within 35 minutes. (PR56.1 ¶ 62.) Plaintiff was late for a previously-scheduled meeting with Muller to discuss the evaluation; Muller declined to proceed with that meeting, informed Plaintiff that she would face discipline, referred to the earlier reprimand and warning, and directed Plaintiff to leave the premises and await further instructions. Muller perceived Plaintiff's conduct as inappropriate and unprofessional. (Aff. of Patricia Muller attached to Def.'s Mot. ("Muller Aff.") ¶ 33; Lang Aff. ¶ 74.)

On or about December 17, 1999, Plaintiff contacted Muller and proposed four scenarios for the future of her affiliation with Defendant: (1) that she be provided with a private office; (2) that she be permitted to work from home; (3) that she be promoted to a Consultant position; or (4) that the parties discuss whether Plaintiff should sever her association with Defendant. (DR56.1 ¶ 65 and evidence cited therein.) Defendant found the first three proposals unacceptable and proposed a termination agreement to Plaintiff. (DR56.1 ¶ 66.) Plaintiff rejected the terms of the proposed agreement. *Id.* Plaintiff's employment was terminated on or about January 26, 2000. (Muller Aff. ¶ 37.) The termination decision was made by Robert Warren. (DR56.1 ¶ 67 and evidence cited therein.) Defendant maintains that the termination decision was based on Plaintiff's unprofessional behavior, "culminating" in the December 15, 1999 incident. *Id.*

Defendant terminated a 28–year old researcher's employment for unprofessional behavior in 1998. (Muller Aff. ¶ 42.)

Plaintiff asserts that three Researchers hired by Defendant from 1999 on were under the age of 40. (Pl.'s Mem. of Law in Opp. to Def.'s Mot. ("Pl.'s Mem.") at 23.)

Rubino, who was Plaintiff's immediate supervisor, did not recommend Plaintiff's termination and was not involved in the termination decision. (DR56.1 ¶ 71.) Plaintiff does not allege that any of Defendant's supervisors or employees made any age-related comments, statements or criticisms about her employment or discriminatory statements regarding her employment. (DR56.1 ¶ 74; PR56.1 ¶ 74.)

Plaintiff asserts that Defendant violated ADEA and anti-discrimination provisions of New York State's Executive Law by making an adverse change in the types of job searches assigned to her, by failing to promote her to the Director of Research position, and by terminating her employment. *See* Compl. ¶ 33.

## PROCEDURAL HISTORY

The complaint in this case was filed on September 5, 2000. Defendant answered on October 3, 2000 and moved to dismiss the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that a defendant's employer status is a jurisdictional threshold for ADEA actions, and it is not an employer for ADEA purposes. On February 1, 2001, the Court issued a Memorandum Opinion and Order denying Defendant's motion, holding that the ADEA's threshold employee-census requirement does not constitute a jurisdictional requirement. *See Frances Newsom–Lang v. Warren International*, 129 F.Supp.2d 662, 664–65 (S.D.N.Y.2001). Defendant thereafter filed the instant motion for summary judgment dismissing Plaintiff's claims and requesting an award of costs and attorneys' fees.

Following the completion of briefing on the motion, the Court was informed that plaintiff's attorney of record, Michael Sussman, had been suspended from legal practice. The Court relieved Mr. Sussman of the representation and gave Plaintiff until November 15, 2002 to secure new counsel and have a notice of appearance filed. No notice of appearance was filed by that date. The Court, at Defendant's request, issued its order to show cause as to why the case ought not to be dismissed for failure to comply with the order regarding the notice of appearance. Plaintiff appeared by new counsel at a conference on January 16, 2003; the Court held oral argument on the instant motion and Defendant withdrew its dismissal request relating to the notice of appearance.

## DISCUSSION

Summary judgment shall be granted in favor of a moving party where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of establishing the absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Burt Rigid Box, Inc. v. Travelers Property Casualty Corp.*, 302 F.3d 83, 90 (2d Cir. 2002) (quoting *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505). In the summary judgment context, a fact is material "if it might affect the outcome of the suit under the governing law," and an issue of fact is genuine, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir.2001) (internal citation omitted). The Second Circuit has explained that the "party against whom summary judgment is sought ... 'must do more than simply show that there is some metaphysical doubt as to the material facts.... The nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir.2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

*Employee Census*

In the instant motion, Defendant renews its argument that Plaintiff's case should be dismissed because Defendant employed fewer than twenty people at all relevant times. As the Court explained in its Opinion and Order dated January 31, 2001, the question of whether or not a defendant is an employer for the purposes of the ADEA is an issue going to the merits of an ADEA plaintiff's case. Factual disputes as to the number of Defendant's employees preclude the Court from ruling in Defendant's favor on this ground. The ADEA provides that "the term 'employer' means a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the *current* or preceding calendar year...." 29 U.S.C.A. § 630(b) (West 1994) (emphasis added). More than twenty employees are reported on Defendant's 1999 quarterly employment tax returns, although Defendant argues that some of those individuals should not be considered Defendant's employees for ADEA purposes and that its biweekly pay records provide a more accurate account of its employee census. *See* Exs. 1 and 2 to Affidavit of Michael H. Sussman in Opposition to Def's. Mot. for Sum. Judg. ("Sussman Aff."); Def.'s Memorandum at 3–6. Furthermore, Defendant has produced no evidence as to the number of its employees in 2000, even though Plaintiff was terminated in January 2000. *See Guadagno v. Wallack Ader Levithan Assoc.,* 932 F.Supp. 94, 96 (S.D.N.Y.1996) ("Since the unlawful termination here complained of occurred in early 1992, the relevant calendar years [for determining employer status] are 1991–92.").

Defendant also asserts that it is entitled to summary judgment because Plaintiff has failed to carry her evidentiary burden with respect to each of the claimed ADEA violations. Although the Court cannot resolve the issue of Defendant's employee census on the current record, the Court has assumed, without deciding, that Defendant meets the definition of employer set out in the ADEA in analyzing the remainder of Defendant's arguments.

*Discrimination Claims*

Employment discrimination cases based on circumstantial evidence, such as this one, are "analyzed under the three-step burden-shifting analysis established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)."[6] *Elliott v. British Tourist Authority,* 172 F.Supp.2d 395, 399 (S.D.N.Y. 2001). First, a plaintiff must establish a *prima facie* case of age discrimination. Once the plaintiff has made out a *prima facie* case, the employer is required to offer a legitimate, nondiscriminatory business rationale for its actions. If the employer provides such a rationale, the plaintiff has the burden of proving that she was discriminated against because of her age. *Schnabel v. Abramson,* 232 F.3d 83, 87–88 (2d Cir.2000). To establish a prima facie case, a plaintiff must show (1) membership in a protected class, (2) that she was performing her job in a satisfactory manner or was qualified for the position sought, (3) that she suffered an adverse employment

---

**6.** The following analysis relates to Plaintiff's state Human Rights Law claims as well as to her ADEA claim. *See Abdu–Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 466 (2d Cir. 2001) ("Although there are differences between the State HRL ... and the federal Age Discrimination in Employment Act ('ADEA'),

age discrimination suits brought under the State HRL ... are subject to the same analysis as claims brought under the ADEA."); *Cruz v. Coach Stores. Inc.,* 202 F.3d 560, 565 n.1 (2d Cir.2000) (consolidating Title VII and state law claims for purposes of analysis).

action, and (4) that the adverse employment action took place under circumstances giving rise to an inference of unlawful discrimination. *Id.*

In this case, there is no dispute that Plaintiff was in the class protected by the ADEA. She was over forty years of age when she was hired by Defendant the first time, in 1994, as well as when she was rehired in 1998. Plaintiff claims three ADEA violations: assignment of more profitable job searches to younger researchers, failure to promote her to the Director of Research position, and the termination of her employment. The Court will address each in turn.

*Job Search Assignments*

■ Defendant argues that it is entitled to judgment as a matter of law on Plaintiff's claim relating to job search assignments because the reassignments, even if they occurred as alleged by Plaintiff, did not constitute an adverse employment action within the meaning of governing legal authority. A decision affecting the terms and conditions of employment is "adverse" for the purpose of establishing a *prima facie* age discrimination case if it creates a "materially significant disadvantage." *Galabya v. New York City Board of Education,* 202 F.3d 636, 641 (2d Cir.2000). In *Galabya,* the plaintiff, a high school teacher, alleged that a series of transfers ultimately resulting in the plaintiff having to teach in an area outside his expertise constituted an adverse employment action. The Second Circuit affirmed the district court's grant of summary judgment to the defendant because it found that the plaintiff had not established that the transfers had caused him a "materially significant disadvantage":

> Appellant has not produced evidence to show that the transfer was to an assignment that was materially less prestigious ... or materially less conducive to career advancement. Accordingly, summary judgment was properly granted on the ground that appellant failed to create a genuine issue of material fact on the issue of whether his reassignment ... was an adverse employment action.

*Id.* Adverse employment actions "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, or other indices ... unique to a particular situation." *Id.* at 640. *See also Preda v. Nissho Iwai Am. Corp.,* 128 F.3d 789, 791 (2d Cir.1997) (issue of material fact on question of adverse action raised by plaintiff who "was excluded from all departmental meetings and outings" and whose "position was reduced to largely clerical tasks"); *Epstein v. Kemper Insurance Co.,* 210 F.Supp.2d 308, 315–16 (S.D.N.Y.2002) (same for plaintiff who "was relieved of much of her workload"); *Valentine v. Standard & Poor's,* 50 F.Supp.2d 262, 286 (S.D.N.Y. 1999) (arguable adverse action when plaintiff had been "relegated to condensing information rather than performing analysis").

■ Plaintiff alleges that, in the summer of 1999, acting Director of Research John Hasenauer altered her assignments "by directing senior, more profitable job searches to more junior and younger research directors," and that by doing so he diminished Plaintiff's income and income potential. (Complaint ¶¶ 11–12; Lang Aff. ¶¶ 21–22.) She alleges that Defendant's President, Robert Warren, told her that the company's bonus system was "based on the number and importance of searches worked on and closed and the efficiency of that effort." (Lang Aff. ¶ 22.) Defendant asserts that compensation is determined not by "the type or level of a search," but by the "quality of a Researcher's work as a whole." (Muller Aff. ¶ 16.) Plaintiff does

not proffer, in response to Defendant's summary judgment motion, evidence that any of the allegedly redirected searches actually resulted in diminution of her bonus or increases in any other Researchers' bonuses. Moreover, there is no dispute that Plaintiff was Defendant's highest-paid researcher in 1999, and received the highest bonus. (Muller Aff. ¶¶ 17, 19; Pl.'s Rule 56.1 Statement ¶¶ 50–51). Thus, even if Plaintiff's description of the bonus structure were accurate, she has offered no evidence that the change in job search assignments affected her income or "income potential" or that any reassigned or redirected searches were "more profitable" in any relevant respect than searches assigned to her. Plaintiff has proffered no facts that would support an inference that Hasenauer's assignment decisions constituted an adverse employment action. Plaintiff has therefore failed to plead a *prima facie* case of age discrimination with regard to this claim. Defendant's motion will be granted with respect to this claim.

*Failure to Promote*

Denial of a promotion is, by contrast, clearly an adverse employment decision. *Cf. Mauro v. Southern New England Telecom., Inc.,* 208 F.3d 384, 386 (2d Cir.2000) (listing elements of *prima facie* case for discriminatory failure to promote). Defendant is nonetheless entitled to judgment as a matter of law on this claim, because Plaintiff has failed to show that she was qualified for the promotion and, even if she is deemed to have made such a showing, has failed to come forward with facts sufficient to raise an issue for trial as to whether Defendant's proffered reasons for its decision not to promote Plaintiff are a pretext for age discrimination.

■ Defendant has proffered evidence that it considered management skills and leadership ability important qualifications for the Director of Research job, and that it was the consensus of the Consultants and of the company's leadership that Plaintiff lacked such skills. In response, Plaintiff focuses on her experience in the job search field and on her success as a Researcher and good working relationships with Consultants in a Researcher capacity. She does not present any evidence to contradict Defendant's assertion of the relevance of management and leadership qualities for this supervisory position. Neither does she present any competent admissible evidence raising a triable issue of fact as to whether the relevant constituencies in the Defendant organization perceived her to possess the requisite management and leadership skills, or proffer any evidence that she has such skills. Under these circumstances, Plaintiff has failed to establish the qualification element of her *prima facie* case. *See Thornley v. Penton Publishing, Inc.,* 104 F.3d 26, 29 (2d Cir.1997) ("being 'qualified' refers to the criteria the employer has specified for the position"); *Brower v. Continental Airlines, Inc.,* 62 F.Supp.2d 896, 905–06 (E.D.N.Y.1999) (plaintiff failed to meet qualification element of *prima facie* case when position required constant interpersonal contact and record showed that she was not "consistently polite or helpful" and that her behavior had been the subject of written complaints). Because, however, the Second Circuit has characterized the burden of establishing a *prima facie* case as "not a heavy one" and as "minimal," *Carlton v. Mystic Transportation, Inc.,* 202 F.3d 129, 134 (2d Cir. 2000), the Court will also consider whether Plaintiff has presented sufficient evidence to raise an issue for trial as to whether Defendant's proffered justifications for the decision not to promote Plaintiff are merely pretexts for age discrimination.

■ Upon a plaintiff's proffer of evidence sufficient to establish a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its decision not to promote Plaintiff. *Id.* In addition to its assertion that its decision was based on the perception that Plaintiff lacked requisite management and leadership skills, Defendant asserts that Plaintiff was disqualified for the promotion because she hung up the phone on her supervisor, John Hasenauer, when he attempted to comment on her work on September 17, 1999. (Muller Dep., Ex. B to Muller Aff., at 26; Hasenauer Dep., Ex. 10 to Def.'s Mot., at 46–50, 52.)

These nondiscriminatory reasons for its decision not to promote Plaintiff to Director of Research having been proffered, the "presumption of discrimination raised by the *prima facie* case simply drops out of the picture" and Plaintiff must offer evidence that "would allow a rational factfinder to conclude that the proffered reason was not the true reason for the adverse employment action, and that age was." *Carlton,* 202 F.3d 129 at 134–35. Plaintiff does not have to prove that age was the only factor in the adverse employment action, but that age "was a determinative factor." *Schnabel,* 232 F.3d at 91. Plaintiff's efforts to demonstrate facts sufficient to raise a jury question in this regard focus principally on her own perception that she was more qualified for the promotion than was Rubino (Pl.'s Mem. at 21; Lang Aff. ¶ 49),[7] and disputing certain details of Defendant's witnesses' accounts of certain aspects of the relevant events. Based on the former, Plaintiff argues that the qualifications justification for Rubino's promotion must be pretextual; as to the latter, Plaintiff asserts that, if her account

of the details were credited over Defendants' witnesses', sufficient questions as to their veracity would be present to call into question their testimony as to the material facts.

The Supreme Court has explained that "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). "Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence," and it is *"permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Id.* at 147, 120 S.Ct. 2097 (emphasis in original). Nevertheless, the Court emphasized that "[c]ertainly there will be instances where, although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Id.* at 148, 120 S.Ct. 2097. An employer "would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.*

The evidence cited by Plaintiff is insufficient to sustain her burden of coming forward with facts from which a rational jury could find that Defendants' asserted reasons are pretextual. Plaintiff's own perception of the superiority of her qualifica-

---

**7.** As noted above, Plaintiff does not address the issues of management and leadership skills in this connection at all.

tions, the fact that the disputed position was initially offered to an outside candidate, and Defendant's witnesses' alleged misrepresentations of the details of meetings with Plaintiff and the like are, individually and in combination, insufficient to raise an issue of fact as to whether Plaintiff's age was a factor in the decision not to promote her to Director of Research. It bears repeating that Plaintiff has come forward with no evidence to indicate that leadership and management skills were not relevant to the decision to deny her the promotion, nor any evidence that she was perceived to possess such skills. She has not proffered any facts to call into question Defendant's account of her September 17, 1999 encounter with Hasenauer or the relevance to the promotion decision of Defendant's managers' perception of unprofessional conduct on her part. She has not alleged that any of Defendant's supervisors or employees ever made any age-related comments or criticisms of her or of her performance. Plaintiff has thus failed to respond to Defendant's proffered justifications with any evidence that could lead a rational jury to disbelieve Defendant's proffered reasons for denying Plaintiff the promotion: the incident with Hasenauer and the consensus of the Consultants. In the light of Defendant's specific, facially legitimate, proffered nondiscriminatory reasons and Plaintiff's failure to come forward with evidence to rebut them, Defendant is entitled to summary judgment dismissing Plaintiff's failure-to-promote claim.

*Termination of Employment*

■ Plaintiff has also failed to come forward with evidence to rebut Defendant's proffered legitimate nondiscriminatory justification for her termination. Defendant is therefore entitled to summary judgment

with respect to this element of Plaintiff's claim.

Defendant asserts that the decision to terminate Plaintiff's employment arose from a series of instances of behavior it considered unprofessional, as detailed above. Defendant further asserts that it terminated the employment of a 28-year-old in 1998 for similar reasons of unprofessional behavior. Plaintiff has not disputed the specifics of the behavior cited by Defendant, although she purports to offer medical reasons for it and disputes the contentions of some of Defendant's witnesses that the behavior was disruptive to other employees. Nor does Plaintiff dispute that she was the one who first raised the prospect of severance, in the context of a series of proposals that called for changes in the employment relationship that Defendant perceived as improvements which would have rewarded behavior that Defendant perceived as unprofessional. (DR56.1 ¶ 66.)

Arguing that Defendant's proffered reason is pretextual, Plaintiff points out that Rubino, her supervisor at the time she was terminated, did not recommend her termination and that Rubino had received no complaints about Plaintiff from her peers. (Pl.'s Mem. at 22; Rubino Dep. at 54–56.) That evidence, does not, however, create a fact issue for trial as to the veracity of Defendant's explanation that Plaintiff was fired, not because of her overall work quality, but because of episodes of unprofessional behavior. Moreover, although Plaintiff may believe that her termination was unwarranted, she does not offer any evidence that could support an inference that she was terminated because of her age.

In her complaint, Plaintiff alleged that "a much younger male, later identified as Eric H[i]ll" was hired to replace her.[8]

---

**8.** The Complaint identifies the alleged replacement as "Hall," but from the briefing on

(Complaint ¶¶ 18–20.) In response to Defendant's motion, which included evidence that Eric Hill was not hired to work as a Researcher, Plaintiff abandoned her claim that Hill was her replacement and instead asserted that a younger woman, Kim Ferraro, was hired to replace her following her termination and that two other Researchers hired by Defendant in 1999 were aged 30 or younger. (Pl.'s Mem. at 16, 23). No evidence of Ferraro's age has been proffered, nor is there any indication as to when Defendant began contemplating hiring her. In light of the undisputed fact that Defendant terminated a 28–year–old for unprofessional conduct immediately before Plaintiff was hired, and given the absence of any age-related comments in connection with Plaintiff's termination, Plaintiff's allegation of a younger replacement does not provide evidence to support an inference of intentional discrimination.

Plaintiff also argues, without offering any workforce analysis or demographic evidence, that her own hiring when she was over the age of 40 is not significant because qualified researchers were scarce in the years when Defendant hired her and Defendant terminated her at a later time when younger, qualified, workers were available. (*Id.* at 23). Without evidence of the scarcity that Plaintiff asserts existed, or of her expertise in this area, Plaintiff's workforce argument amounts to conclusory speculation, and is not evidence from which a jury could reasonably infer intentional discrimination. *See Burt Rigid Box, Inc.*, 302 F.3d at 91 ("nonmoving party may not rely simply on conclusory statements").

In addition, Plaintiff offers as evidence of Defendant's alleged discriminatory animus the fact that her termination occurred after she had informed Defendant, in November 1999, that she was considering filing a complaint with the EEOC. (Pl.'s Mem. at 25.) The Court notes that the Complaint does not assert a retaliation cause of action, nor did Plaintiff argue that it did, or that she should be allowed to amend the Complaint, when this question arose during oral argument on the instant motion. The only comments by Defendant regarding Plaintiff's EEOC complaint in the record are those of Muller, assuring Plaintiff that Defendant would not tolerate any retaliation against her. (Ex. 3 to Muller Aff.) Moreover, termination of Plaintiff's employment which, again, was first mentioned as a possibility by Plaintiff, did not occur until after the December 15, 1999 leaving-work incident described above. Plaintiff has offered no evidence sufficient to support an inference that her termination was retaliatory.

As noted in the discussion of *Reeves* above, although a jury may infer intentional discrimination on the basis of a plaintiff's *prima facie* case and sufficient evidence that a defendant's explanation for the employment action is false, to survive summary judgment a plaintiff must proffer evidence "upon which a reasonable trier of fact could base the conclusion that age was a determinative factor" in a defendant's decision. *Schnabel*, 232 F.3d at 91. In *Schnabel*, the Second Circuit granted defendants' motion for summary judgment, even though the court found that a jury could reasonably conclude that defendants' stated reasons for firing the plaintiff were pretextual. The *Schnabel* plaintiff had offered a letter in which his supervisor was quoted as saying he had no complaints about plaintiff's work, but that he would fabricate a letter claiming plaintiff had been fired for cause if plaintiff refused to resign. *Id.* at 88. Despite this evidence of pretext, Schnabel did not demonstrate

the motion, it appears his name is "Hill."

"that the asserted pretextual reasons were intended to mask age discrimination. In fact, beyond the ... *prima facie* case, Schnabel has offered *no* evidence that he was discriminated against *because of his age." Id.* (emphasis in original).

The *Schnabel* court recognized that, in light of *Reeves*, ADEA plaintiffs are not required "in all instances to offer more than a *prima facie* case and evidence of pretext," but that nonetheless a *prima facie* case combined with evidence of pretext will not always be adequate "to sustain a jury's finding of liability." *Id.* at 89–90 (internal quotation marks omitted). A "case-by-case approach" is required, "with the court examining the entire record to determine whether the plaintiff could satisfy his ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." *Id.* at 90 (internal quotation marks omitted). In upholding summary judgment in *Schnabel*, the court examined a number of factors that distinguished the case from *Reeves*, a case that the Supreme Court held should have gone to the jury.

The deficiencies of Plaintiff's case instructively parallel those of the *Schnabel* plaintiff's. Newsom–Lang's case is "far weaker" than the plaintiff's case in *Reeves*, because there is no evidence that Plaintiff's age was discussed by Defendant with respect to its decision, or that Plaintiff was subjected to "any age-related comments or criticism on the job." *Schnabel*, 232 F.3d at 91. Reeves had been told by his supervisor that he "was too damn old to do his job." *Id.* Also, and significantly, Newsom–Lang was fired by the same person who hired her previously when she was already over 40 years old, a factor that the Second Circuit has held to be "highly relevant" in "adjudicating a motion for summary judgment on an ADEA claim." *Id.* Plaintiff has not presented sufficient evi-

dence from which a reasonable jury could conclude that Defendant terminated her employment because of her age. Accordingly, Defendant's motion will be granted with respect to her termination claim.

*Attorneys' Fees*

Defendant has cited no legal basis for an award of attorneys' fees; this request is denied.

### CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted to the extent that Plaintiff's federal and state claims are dismissed with prejudice, and is denied to the extent it requests an award of attorneys' fees. Judgment dismissing the complaint shall be entered in Defendant's favor, and Defendant shall recover its costs.

IT IS SO ORDERED.